UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ZACK MCCAIN III,                 :
                                 :
        Plaintiff,               :
                                 :
    v.                           :   Case No. 2:14-cv-92
                                 :
UNITED STATES OF AMERICA,        :
CORRECTIONS CORPORATION          :
OF AMERICA, EQUAL                :
EMPLOYMENT OPPORTUNITY           :
COMMISSION, STATE OF             :
VERMONT, KOHL'S DEPARTMENT       :
STORES, INC., COSTCO             :
WHOLESALE CORPORATION,           :
R. BENOIT, JOHN DOE 1,           :
JOHN DOE 2, BART                 :
CHAMBERLAIN, ROBERT              :
SANDERS, JACQUELINE A.           :
BERRIEN, MACY'S RETAIL           :
HOLDINGS, KENNETH AN,            :
MARY AHRENS VADASZ,              :
                                 :
        Defendants.              :

OPINION AND ORDER
(Docs. 9, 11, 13, 30, 36, 52, 56, 60, 63, 64, 82)

Plaintiff Zach McCain III, proceeding *pro se*, brings

this civil rights action against Defendants United States of

America, Correction Corporation of America ("CCA"), Equal

Employment Opportunity Commission ("EEOC" or "the

Commission"), the State of Vermont ("the State"), Kohl's

Department Stores, Inc. ("Kohl's Stores"), Costco Wholesale

Corporation ("Costco"), R. Benoit ("Officer Benoit"), John

Doe 1, John Doe 2, Bart Chamberlain ("Officer Chamberlain"), Robert Sanders ("Mr. Sanders"), Jacqueline A. Berrien ("Ms. Berrien"), Macy's Retail Holdings ("Macy's Holdings"), Kenneth An ("Mr. An"), and Mary Ahrens ("Ms. Ahrens"). Mr. McCain alleges that Defendants discriminated against him on the basis of race, violated his constitutional rights, and otherwise conspired to discriminate against him by preventing him from obtaining employment.

Now pending before the Court are: Officer Benoit's Motion to Dismiss (Doc. 9); Officer Chamberlain's Motion to Dismiss (Doc. 11); Macy's Holdings's Motion to Dismiss (Doc. 13); Costco and Ms. Ahrens's Motion to Dismiss (Doc. 30); CCA's Motion to Dismiss (Doc. 36); Kohl's Stores's Motion to Dismiss (Doc. 52); the State's Motion to Dismiss (Doc. 56); Motion to Dismiss filed by the United States, EEOC, Mr. An (official capacity), Ms. Berrien (official capacity), and Mr. Sanders (official capacity) (Doc. 60); Motion to Dismiss filed by Mr. An (individual capacity) and Ms. Berrien (individual capacity) (Doc. 63); Mr. McCain's Motion for Sanctions (Doc. 64); and Mr. McCain's Motion to Reconsider (Doc. 82). John Doe 1 and John Doe 2 have not been served, and Mr. Sanders has not been served in his individual

2

capacity.[1]

## Factual Background and Procedural History

This case was transferred from the U.S. District Court for the District of Columbia by the Honorable Richard J. Leon on April 4, 2014 (Doc. 4) upon review of Mr. McCain's original Complaint (Doc. 1), Motion for Leave to Proceed *In Forma Pauperis* ("IFP") (Doc. 2), and subsequent Amended Complaint (Doc. 7.) On May 8, 2014, this Court granted Mr. McCain's Motion for Leave to Proceed IFP (Doc. 6.)

For the limited purpose of ruling on the pending motions to dismiss, the facts alleged in Mr. McCain's Amended Complaint will be accepted as true. The Amended Complaint alleges a series of different incidents summarized here:

---

[1] Contrary to this Court's January 20, 2015 text-only Order (Doc. 81) denying as moot Mr. McCain's motions seeking reissuance of summonses and service of the Amended Complaint on federal defendants (Docs. 27, 54), Mr. Sanders has only been served in his official capacity, and not in his individual capacity. Nonetheless, as further set forth herein, the Court has reviewed the allegations against Mr. Sanders in his individual capacity pursuant to 28 U.S.C. § 1915(e)(2)(B) and concludes that the Amended Complaint fails to state any claims against Mr. Sanders pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Accordingly, Mr. McCain's motions (Docs. 27, 54)are denied as moot with respect to Mr. Sanders in his individual capacity because all claims against Mr. Sanders are dismissed.

A. Mr. McCain's Criminal History

Mr. McCain is African-American.  In 1993 or 1994, Mr. McCain pled guilty to federal criminal charges under a plea agreement and was ordered to serve eight years and nine months in prison.  In 2003, he was released.  Between 2007 and 2009, he pled guilty to two additional charges in Vermont state court after entering into separate plea agreements, and he served an additional six months.  None of these plea agreements addressed the issue of Mr. McCain's future employment.  Nonetheless, these convictions have impacted his ability to obtain employment.

B. Allegations Regarding Macy's Holdings

On or about February 10, 2010, Mr. McCain applied for a position at a Macy's Holdings retail store and responded "no" to a question regarding previous criminal convictions (Doc. 7 at 6.)  Macy's Holdings did not perform criminal background checks for menswear department employees at its retail stores in Vermont, New Hampshire, and Maine, "which are predominantly white populated states." Id.  On April 10, 2010, Macy's Holdings hired Mr. McCain, and after a month, he was promoted to the home department.  After a conflict arose between Mr. McCain and a fellow employee, the

employee reported to the store security officer, Mr. Ploof, that she had found information about Mr. McCain on the internet.

On or about June 5, 2010, when Mr. McCain reported for work, Mr. Ploof requested to search Mr. McCain's bag.  Mr. McCain consented with the understanding that if he refused, Mr. Ploof would call the police.  Mr. Ploof found nothing. On June 6, 2010, Mr. Ploof notified Mr. McCain that Macy's Holdings had decided to suspend him for falsifying his employment application.

On July 12, 2010, Mr. McCain applied for unemployment benefits with the State of Vermont Department of Labor.  He received benefits after the claims adjudicator determined that Mr. McCain did not engage in misconduct.  Mr. McCain also filed a charge of employment discrimination with the State of Vermont Attorney General's Office ("VT AGO").  VT AGO eventually rendered a determination that Macy's Holdings did not discriminate against Mr. McCain on the basis of his race.

C. Allegations Regarding Kohl's Stores

On or about Augusut 5, 2010, Kohl's Stores rescinded an offer of employment it had made to Mr. McCain after

5

receiving the results of a criminal background check. On or about March 2, 2013, Mr. McCain spoke with a human resource officer and then a different employee at Kohl's stores, both of whom gave him conflicting information about the company's criminal background check policy.

D. Allegations Regarding Costco

In or about September 2010, Mr. McCain filed a charge of discrimination against Costco with the EEOC.  In or about November 2010, EEOC Investigator Paul Campbell sent Mr. McCain a cause finding, and "[a]ll parties then entered into conciliation thereafter."  Id. at 8.  Ms. Ahrens served as legal counsel for Costco during the settlement negotiations. On March 10, 2012, Mr. McCain received settlement documents from the EEOC, which he signed and returned to Mr. Campbell. Mr. Campbell instructed him that he would receive settlement documents from Costco as well.  A few months later, having not received the settlement agreement from Costco, a dispute arose between Mr. McCain and Ms. Ahrens concerning the amount Costco would pay him and whether taxes would be paid from that amount.

On June 26, 2012, Mr. McCain received a document from Ms. Ahrens indicating that she and Mr. Campbell had "entered

into some type of agreement for [Mr. Campbell] to coordinate the signing of Costco's Release and Settlement Agreement with [Mr. McCain]." Id. at 9.  On November 2, 2012, Mr. McCain sent a letter to Ms. Berrien, EEOC Chair, to notify her that the agreement proposed by Costco "made [Mr. McCain] ineligible to ever [be] hired at any [of] their facilities." Id. at 10. EEOC's New York Field Office District Director, Kevin J. Berry, "acting for [Ms. Berrien], made a determination that the particular provision was retaliatory, but took no legal actions to change the harm that it had already [] caused." Id.

On December 12, 2012, Mr. An, EEOC Boston Field Office Enforcement Supervisor, instructed Mr. McCain to give Ms. Ahrens his social security number.  According to a former EEOC employee named Ricardo Jones, "there was a conspiracy against black people through the EEOC[.]" Id. at 15.

E. Allegations Involving Police Stops

On March 12, 2013, Officer Benoit, a City of Winooski police officer, stopped Mr. McCain while he was driving and issued him a ticket.  On March 30, 2013, John Doe 1, a City of Vergennes police officer, stopped Mr. McCain while he was driving because "his tag light was out, but didn't issue him

a ticket on the spot." <u>Id</u>. at 18. John Doe 2, another police officer, then arrived on the scene. Mr. McCain consented to a search of his vehicle, and during the search, John Doe 1 opened an envelope containing numerous settlement agreements. Upon seeing the documents and "due to [John Doe 1] being suspicious of [Mr. McCain] traveling in a Saab," John Doe 1 searched the glove compartment and eventually found alleged "residue of heroin." <u>Id</u>. John Doe 1 and John Doe 2 did not believe Mr. McCain when he told them he thought the substance was brownie mix. Subsequent charges related to this incident were later dismissed.

A few days later, Officer Chamberlain, a Town of Williston police officer who is Caucasian, stopped Mr. McCain while driving. When Officer Chamberlain determined that Mr. McCain had been stopped in Vergennes "for heroin" he "allowed [Mr. McCain] to leave[.]" <u>Id</u>. at 19.

F. General Conspiracy Against African-Americans

The Amended Complaint also alleges a series of other facts in support of Mr. McCain's constitutional conspiracy claims. First, the State contracts with CCA to provide prison facilities for Vermont inmates. African-Americans comprise only one percent of the Vermont population, but

8

they comprise 10.3 percent of Vermont's prison population. CCA has entered into a contract with Macy's Holdings "for cheap convict labor . . . to move the conspiracy closer to the ultimate objective[.]" Id. at 14.  In 2011, CCA took in $1.7 billion in revenue and profits.

The State, through Governor Peter Shumlin or his predecessor, also furthered the conspiracy against African-Americans by enacting 23 V.S.A. § 601, which criminalizes operating a vehicle with a suspended license.

Additionally, the authority that EEOC delegates to the VT AGO to investigate federal employment discrimination claims "is used under a disguise to facilitate the conspiracy between the State of Vermont in a hub of conspiracy with CCA, and other states, to make conditions so[] that it would perpetuate the adverse impact upon African[-]Americans [such] as [Mr. McCain], as an attempt[] to assert pressure, to bring about criminal convictions." Id. at 11.

G.  Summary of Legal Claims

Mr. McCain alleges 16 different causes of action arising under federal statute and the United States and Vermont constitutions.  They include conspiracy to deprive

9

Mr. McCain of constitutional rights, First, Fourth, Fifth, Tenth, Thirteenth and Fourteenth Amendment rights violations, Title VII violations, violations of the Contracts Clause of Article I of the United States Constitution, causes of actions brought pursuant to 42 U.S.C. §§ 1981(a), 1983, 1985(2), 1985(3), and 1986, Article 11 violations under the Vermont Constitution, and a cause of action brought pursuant to 42 U.S.C. § 552A.  Mr. McCain seeks declaratory and injunctive relief and compensatory and punitive damages (Doc. 7 at 24-25.)

<u>Discussion</u>

I.    <u>Mr. McCain's Motion to Reconsider</u>

On January 20, 2015, the Court issued a text-only order granting various motions for extensions of time and denying as moot certain other motions filed by Mr. McCain (Doc. 81.) Mr. McCain moves to reconsider this Order in part, arguing that the Court should not have granted Costco's Motion to Seal Exhibit B (Doc. 31), that he did not receive copies of some of Defendants' motions (Docs. 29, 35, 41, 42), and that the Court should not have granted Defendants' motions as unopposed (Doc. 82.)

Under Second Circuit law, "[t]he standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that . . . might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). The moving party may "obtain relief only when [it] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 108 (2d Cir. 2013) (internal quotation marks omitted). "A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the [c]ourt, nor may it be used as a vehicle for relitigating issues already decided by the [c]ourt." Davidson v. Scully, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001) (citing Shrader, 70 F.3d at 257); accord Nat'l Union Fire Ins. Co. v. Las Vegas Prof'l Football Ltd. P'ship, 409 F. App'x 401, 403 (2d Cir. 2010) (noting it is "black letter law" that a motion for reconsideration may not "be used as a vehicle for

11

relitigating issues already decided by the [c]ourt")
(internal quotation marks omitted).

   *Motion to Seal*

 First, the Court will address its order granting
Costco's Motion to Seal Exhibit B (Doc. 31), which sealed the
confidential settlement agreement between Mr. McCain and
Costco referenced in the Amended Complaint and attached to
Costco and Ms. Ahren's Motion to Dismiss.  The decision as to
whether to seal documents filed with the court is a matter of
discretion.  See <u>Nixon v. Warner Comm., Inc.</u>, 435 U.S. 589,
599 (1978) (trial court has discretion to determine access to
court documents "in light of the relevant facts and
circumstances of the particular case.").  Mr. McCain concedes
that he did not file any specific objection to the Motion to
Seal (Doc. 82-1 at 2), and instead argues that the Court
should not rely on this document without first converting the
pending Motion to Dismiss into a Motion for Summary Judgment.
This Opinion and Order has addressed Mr. McCain's concerns,
where, as set forth in greater detail below, the Court denied
without prejudice due to certain disputes regarding this
document.  At this stage, Court has not relied upon the
contents of settlement agreement to reach this conclusion.

If and when a motion before the Court requires the Court to review the settlement agreement, a different outcome may be warranted with respect to any motion to seal.  See Fed. R. Civ. P. 5.2(d) and (f); Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982) ("[D]ocuments used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons.").

*Service of Motions*

Mr. McCain argues he never received copies of some of Defendants' motions seeking enlargement of time (Doc. 82-1 at 4.)  Under Fed. R. Civ. P. 5, service of motions may be made by "mailing [a copy] to the person's last know address – in which event service is complete upon mailing[.]" Fed. R. Civ. P. 5(b)(2)(C).  The Court's Local Rules of Procedure also require a party to provide the Court with her or her current addresses.  See Local Rule 11(C).  A review of Defendants' motions for enlargement and accompanying certificates of service indicate that in each instance, Defendants mailed copies of their respective motions to Mr. McCain at the Burlington, Vermont mailing address on file with the Court. See Docs. 29 at 4, 35 at 2, 41-1 at 2, 42 at 5.  Accordingly,

Mr. McCain cannot argue that he was not apprised of the contents of Defendants' motions.

*Failure to File Opposition*

Finally, Mr. McCain argues that the Court should not have granted Defendants' motions as unopposed, because Defendants noted in their papers that Mr. McCain refused to consent to their motions (Doc. 82-1 at 8.) Regardless of Mr. McCain's communications with Defendants, he did not file any memoranda in opposition, which despite his status as a *pro se* party, he has demonstrated his ability to do in other instances.

Accordingly, because Mr. McCain has not raised any controlling law that would alter the Court's conclusions with respect to its Order (Doc. 81), Mr. McCain's Motion to Reconsider (Doc. 82) is DENIED.

## II. Applicability of Rule 12(b)(6) Motion to Dismiss

Before turning to the pending motions to dismiss, the Court addresses Mr. McCain's argument that Defendants cannot seek dismissal of his claims pursuant to Fed. R. Civ. P. 12(b)(6), because the District for the District of Columbia's Order Transferring Pro Se Case ("Transfer Order") (Doc. 4)

14

and this Court's Order granting Mr. McCain's Motion for Leave
to Proceed IFP ("IFP Order") (Doc. 6) effectively deemed his
claims "viable."  <u>See</u> Doc. 34 at 10 and Doc. 39 at 1-2.  Mr.
McCain argues that Defendants can only move for
reconsideration of both orders pursuant to Fed. R. Civ. P.
59(e) or Rule 60(b).[2]

First, with respect to the Transfer Order, Judge Leon
did not address the merits of any of Mr. McCain's legal
claims, and instead transferred the entire matter to this
District for all further proceedings, including IFP review.
Although Mr. McCain is confused by the sentence, "[t]he Court
assumes deciding that plaintiff states viable claims[,]"
(Doc. 4 at 1), the Court reads this sentence with the
typographical omission of the word "without."  This sentence
should read: "The court assumes *without* deciding that
plaintiff states viable claims."  The Court does not construe
the Transfer Order as ruling that Mr. McCain "states viable

---

[2]  Although Mr. McCain cites Rule 54(b), the Court construes Mr.
McCain's argument as suggesting that Defendants must file a motion to
alter or amend judgment pursuant to Fed. R. Civ. P. 59(e) or seek
relief from final judgment pursuant to Fed. R. Civ. P. 60(b).  Rule
54(b) does not apply to the issue raised by Mr. McCain.  <u>See</u> Fed. R.
Civ. P. 54(b) (providing for entry of judgment in cases involving
multiple parties or claims).

claims," given that the sentence lacks proper syntax otherwise.

Mr. McCain's argument with respect to the IFP Order - that this Court has already ruled on the merits of his claims - is also incorrect. The IFP Order merely grants Mr. McCain IFP status based upon the financial circumstances shown in the affidavit required by 28 U.S.C. § 1915(a). The Court did not issue any ruling entitling Mr. McCain to final judgment with respect to any of his claims. The fact that the Court did not identify or otherwise rule on possible grounds for *sua sponte* dismissal pursuant to 28 U.S.C. § 1915(e)(2),[3] does not preclude the Court from later dismissing Mr. McCain's claims. See <u>Saleh v. United States</u>, 580 Fed. App'x 22, 24 (2d Cir. 2014) ("A district court has the inherent authority to dismiss an action as frivolous, regardless of whether the plaintiff has been granted leave to proceed *in forma pauperis*.") (citing <u>Fitzgerald v. First E. Seventh St. Tenants Corp.</u>, 221 F.3d 362, 363-64 (2d Cir. 2000).

---

[3] The Court also did not conduct any screening pursuant to 28 U.S.C. § 1915A, because § 1915A only applies to certain cases involving prisoners. At present, nothing in the record suggests that Mr. McCain is a prisoner.

Rule 12 expressly provides that Defendants may assert the defenses of lack of subject matter jurisdiction (Rule 12(b)(1)) or failure to state a claim (Rule 12(b)(6)) by motion, and the Rule further requires that such motions be made prior to filing a responsive pleading or answer. See Fed. R. Civ. P. 12(b) ("a party may assert the following defenses by motion . . . A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."). Even if Defendants had not filed these motions as responsive pleadings, the Court would have authority to construe them as motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). See Patel v. Contemp. Classics of Beverly Hills, 259 F.3d 123, 125-26 (2d Cir. 2001); see also Fed. R. Civ. P. 12(h)(3) ("[i]f the court determines that it lacks subject-matter jurisdiction, the court must dismiss the action."). The Court rejects Mr. McCain's argument that Defendants are precluded from filing motions to dismiss based on prior rulings and therefore proceeds to the pending motions.

III.    <u>Motion to Dismiss Standard</u>

Defendants seek dismissal of the Amended Complaint either under Federal Rules of Civil Procedure 12(b)(1) or 12(b)(6).  Filings by self-represented parties are "to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (internal quotations marks and citations omitted).

Federal Rule of Civil Procedure 8(a) requires the plaintiff to provide "a short plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  On a motion to dismiss pursuant to Rule 12(b)(6), the court reviews the face of the plaintiff's complaint and accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff. <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1174 (2d Cir. 1993).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,

570 (2007)).  "The plausibility standard is not akin to a
'probability requirement,' but it asks for more than a sheer
possibility that a defendant has acted unlawfully."  <u>Iqbal</u>,
556 U.S. at 678.

Even a facially-sufficient complaint may be properly
dismissed for lack of subject matter jurisdiction under Rule
12(b)(1) "when the district court lacks the statutory or
constitutional power to adjudicate it."  <u>Makarova v. United
States</u>, 201 F.3d 110, 113 (2d Cir. 2000).  The party
asserting subject matter jurisdiction has the burden of
proving, by a preponderance of the evidence, that the court
has jurisdiction.  <u>Id</u>.

Finally, a district court may dismiss a case if it
determines that the complaint "is frivolous or malicious;
fails to state a claim on which relief may be granted; or
seeks monetary relief against a defendant who is immune from
such relief."  28 U.S.C. § 1915(e)(2)(B).

IV.  <u>Officer Benoit and Officer Chamberlain's Motions to
Dismiss</u>

Officer Benoit and Officer Chamberlain both move to
dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Because the

facts alleged against these Defendants are similar, both
motions are addressed together.

The Amended Complaint alleges that Officer Benoit
"followed [Mr. McCain's] vehicle onto private property, and
pursuant to 23 V.S.A. Section 601, turned his lights on, and
jumped out of his police cruiser[.]" (Doc. 7 at 17.)  Officer
Benoit "stated 'are you Zack McCain?['] and then asked him
did he have any drugs, and gave him a ticket." <u>Id</u>.  As for
Officer Chamberlain, the Amended Complaint alleges that he
pulled Mr. McCain over several weeks later, despite the fact
that Mr. McCain "made no incorrect [turns] whatsoever." <u>Id</u>.
at 19.  "Defendant Chamberlain said he saw in the computer
[Mr. McCain] had gotten stop[ped] in Vergennes for heroin,
but allowed [Mr. McCain] to leave because he was under an
implicit impression that [Mr. McCain] was under a condition
of servitude . . . prohibited by the 13th Amendment." <u>Id</u>.

The Amended Complaint alleges that both Defendants
violated Mr. McCain's Fourth Amendment and Article 11 rights.
The Amended Complaint also alleges that Officer Benoit and
Officer Chamberlain both "carr[ied] out overt acts of the

20

conspiracy between the State of Vermont and CCA" to increase incarceration rates among African-Americans.  <u>Id</u>. at 3, 4.

A. Conspiracy Claims

Section 1985(3) prohibits conspiracies "for the purpose of depriving . . . any person or class of persons of the equal protection of the laws."  42 U.S.C. § 1985(3). A § 1985(3) claim "must plead facts that show: 1) a conspiracy; 2) for the purpose of depriving any person or class of persons of the equal protection of the laws or of the equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is injured in his person or property or deprived of a right or privilege of a citizen."  <u>Martinez v. Cnty. of Suffolk</u>, 999 F. Supp. 2d 424, 431 (E.D.N.Y. 2014) (citing <u>Thomas v. Roach</u>, 165 F.3d 137, 146 (2d Cir. 1999)).

The plaintiff "must provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end."  <u>Webb v. Goord</u>, 340 F.3d 105, 110 (2d Cir. 2003); <u>see also</u> <u>Ostrer v. Aronwald</u>, 567 F.2d 551, 553 (2d Cir. 1977) ("[C]omplaints containing only conclusory, vague,

or general allegations of conspiracy to deprive a person of constitutional rights will be dismissed.").

Here, the Amended Complaint does not allege any facts to suggest that Officer Benoit or Officer Chamberlain entered into a meeting of the minds with the State of Vermont or CCA to achieve an unlawful end.  Mr. McCain argues that the traffic stops themselves constitute evidence of an "overt act."  (Doc. 34 at 2.) However, these allegations do not give rise to a plausible inference that either traffic stop was connected to the larger conspiracy involving the State and CCA.

Furthermore, none of the facts suggest "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the [alleged] conspirators' action." Thomas, 165 F.3d at 146 (internal quotations omitted). Because the Amended Complaint relies upon vague, conclusory allegations and lacks allegations suggesting racial animus, Mr. McCain's § 1985 conspiracy claims against Officer Benoit and Officer Chamberlain are DISMISSED.

    B. Fourth Amendment and Article Eleven Claims

The Court analyzes Mr. McCain's Fourth Amendment and Article 11[4] claims coextensively under the Fourth Amendment analysis articulated in <u>Terry v. Ohio</u>, 392 U.S. 1 (1968). <u>See</u> <u>State v. Edmunds</u>, 58 A.2d 961, 964, 192 Vt. 400, 403-04 (Vt. 2012) (holding that "reasonable suspicion" test applies to Fourth Amendment and Article 11 claims arising from investigative traffic stop) (citing <u>Terry v. Ohio</u>, 392 U.S. 1 (1968)).

Under <u>Terry</u>, an officer may "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." <u>Illinois v. Wardlow</u>, 582 U.S. 119, 123 (2000) (citing <u>Terry</u>, 392 U.S. at 30). The reasonable suspicion standard requires only a reasonable belief of criminal activity. <u>Terry</u>, 392 U.S. at 30. To determine whether the facts available to the officer at the time of the stop supported a reasonable

---

[4]  Whether a civil cause of action for monetary damages arising from an Article 11 violation is cognizable under state law remains unresolved. <u>See</u> <u>Hightower v. Hatch</u>, 2014 WL 5810110, No. 2:14-cv-100, slip op at *3 (D. Vt. Nov. 7, 2014); <u>see</u> <u>also</u> <u>Kent v. Katz</u>, 146 F. Supp. 2d 450, 464 (D. Vt. 2001) (cautioning that a private right of action for money damages does not exist with respect to all Vermont constitution claims and resolving Article 10 and Article 11 issues on qualified immunity grounds).

suspicion, the circumstances must be viewed as a whole and through the eyes of a reasonable officer in that particular situation, with that officer's experience and training. United States v. Delos-Rios, 642 F.2d 42, 45 (2d Cir. 1981).

i. Officer Benoit

Officer Benoit argues that because Mr. McCain alleges that he stopped Mr. McCain's vehicle "pursuant to 23 V.S.A. Section 601," he had a reasonable, articulable suspicion that Mr. McCain was violating a traffic law at the time he stopped the vehicle.

"[R]easonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop." United States v. Stewart, 551 F.3d 187, 193 (2d Cir. 2009); see also Edmunds, 58 A.3d at 964 (holding that knowledge that owner of vehicle has suspended license constitutes reasonable suspicion under both Fourth Amendment and Article 11). Section 601 of Title 23 prohibits operating a motor vehicle without a valid license.[5]  Taken together with Mr. McCain's

_____

[5]  The statute provides, "[e]xcept as otherwise provided by law, a resident shall not operate a motor vehicle on a highway in Vermont unless he or she holds a valid license issued by the

24

other allegations indicating that he did not, in fact, have a valid driver's license at the time of the stop, the allegation that Officer Benoit stopped Mr. McCain "pursuant to" § 601 indicates that Officer Benoit reasonably suspected that Mr. McCain was operating without a valid driver's license and therefore violating a traffic law.

Mr. McCain argues that Officer Benoit's subjective motivation for the stop was Mr. McCain's race or a desire to prosecute cases for possession of illegal drugs. However, the Second Circuit has ruled that even where a plaintiff demonstrates that the reason for the stop was pretextual, "an officer's use of a traffic violation as a pretext to stop a car in order to obtain evidence for some more serious crime is of no constitutional significance." United States v. Dhinsa, 171 F.3d 721, 724-25 (2d Cir. 1999) (citing Whren v. United States, 517 U.S. 806, 814 (1996)).

Therefore, because the facts alleged demonstrate that Officer Benoit had a reasonable, articulable suspicion

---

State of Vermont." 23 V.S.A. § 601(a)(1). Alternately, "a nonresident . . . shall not operate a motor vehicle on a Vermont highway unless . . . he or she holds a valid license or permit to operate a motor vehicle issued by another U.S. jurisdiction[.]" 23 V.S.A. § 601(a)(2)(A).

necessary to conduct the traffic stop, Officer Benoit's
Motion to Dismiss is GRANTED.  All claims against Officer
Benoit, including Mr. McCain's Fourth Amendment and Article
11 claims, are DISMISSED.

ii. Officer Chamberlain

Officer Chamberlain also argues that Mr. McCain has not
stated a Fourth Amendment claim because a reasonable
suspicion existed at the time of the stop.  Officer
Chamberlain argues that Mr. McCain "admits he was driving
with a suspended license" and urges the Court to infer that
like Officer Benoit, Officer Chamberlain lawfully stopped Mr.
McCain pursuant to 23 V.S.A. § 601. (Doc. 11 at 3.)

Officer Chamberlain articulates one set of inferences
that can be drawn from the Amended Complaint, but does not
address the inferences most favorable to Mr. McCain.  Unlike
the incident involving Officer Benoit, the Amended Complaint
does not allege that Officer Chamberlain effected the stop
"pursuant to" § 601.  Instead, the Amended Complaint alleges
that Mr. McCain "made no incorrect turn[]s whatsoever[.]"
Taken in context and drawing all reasonable inferences in
favor of Mr. McCain, the Court infers that Mr. McCain was not

violating any traffic law when Officer Chamberlain effected the stop.[6]

Accordingly, the Court concludes that the Amended Complaint alleges sufficient facts to state a claim against Officer Chamberlain for violating Mr. McCain's Fourth Amendment right to be free from unreasonable searches and seizure. Officer Chamberlain's Motion to Dismiss is DENIED IN PART with respect to Mr. McCain's Fourth Amendment and Article 11 claims.

V. Macy's Holdings's Motion to Dismiss

Macy's Holdings moves to dismiss for failure to state a claim, arguing that Mr. McCain does not allege sufficient facts to state any legal claims. The Amended Complaint alleges that Mr. McCain was a Macy's Holdings employee who was suspended on or about June 6, 2010 after he falsifyied a portion of his employment application which inquired about past criminal convictions. The Amended Complaint alleges

---

[6] This inference is supported by the allegation that Officer Chamberlain "allowed [Mr. McCain] to leave" without issuing a ticket, although this fact is not dispositive of the underlying issue itself. See Dhinsa, 171 F.3d at 725-26 (rejecting argument that failure to issue a ticket demonstrates that a traffic stop was unconstitutional).

that this conduct violated his Thirteenth Amendment rights
and constituted race discrimination pursuant to § 1981.

A. Thirteenth Amendment Claim

Macy's Holdings argues that Mr. McCain does not state a
Thirteenth Amendment claim, because a plaintiff cannot bring
this type of claim against a private party and the facts
alleged do not suggest that Mr. McCain was subject to
involuntary servitude (Doc. 13 at 1.)

The Thirteenth Amendment provides that "[n]either
slavery nor involuntary servitude . . . shall exist within
the United States." U.S. Const. amend. XIII. The term
"involuntary servitude" refers to "a condition of servitude
in which the victim is forced to work for the defendant by
the use or threat of physical restraint or physical injury,
or by the use or threat of coercion through law or the legal
process." McGarry v. Pallito, 687 F.3d 505, 511 (2d Cir.
2012) (quoting United States v. Kozminski, 487 U.S. 931, 952
(1988)). Mr. McCain does not allege that he was forced to
work for Macy's Holdings by the use of any physical threat,
injury, or other coercion. Furthermore, "the Thirteenth
Amendment does not give rise to an independent cause of

action against private parties[.]" <u>Del Elmer; Zachay v.</u>
<u>Metzger</u>, 967 F. Supp. 398, 402 (S.D. Cal. 1997) (collecting
cases).  Because the Amended Complaint fails to state a
Thirteenth Amendment claim against Macy's Holdings, this
claim is DISMISSED.

     B.   Section 1981 Claim

    Macy's Holdings argues that the Amended Complaint does
not allege any facts to show that Macy's intended to
discriminate against Mr. McCain when it suspended him, as
required under § 1981.  The Amended Complaint summarily
alleges that Macy's Holdings "[s]ubject[ed] the plaintiff to
different terms and conditions . . . by selective
enforc[ement] [of] criminal background checks on the bas[i]s
of race[.]" (Doc. 7 at 21-22.)  More specifically, the
Amended Complaint alleges that "Macy's didn't do criminal
background checks for men's wear departments for stores in
Vermont, New Hampshire, and Maine, which are predominantly
white populated states." <u>Id</u>. at 6.  Additionally, "Macy's
subjected plaintiff to different terms and conditions of a
contract than [a fellow employee], on the bas[i]s of race and
criminal history[.]" <u>Id</u>. at 7.

A claim for discrimination under § 1981(a) requires the plaintiff to allege: 1) plaintiff belongs to a racial minority group; 2) defendant intended to discriminate on the basis of race; and 3) the discrimination concerns an enumerated activity.  See City of Oneonta, 221 F.3d at 339. Macy's Holdings concedes that the Amended Complaint satisfies the first and third elements of a § 1981(a) claim.

As to the second element, the Amended Complaint does not allege facts that give rise to any plausible inference that Macy's Holdings intended to discriminate against Mr. McCain when it suspended him for falsifying his employment application.  Again, "a plaintiff pursuing a claimed violation of § 1981 . . . must show that the discrimination was intentional[.]"  Patterson, 375 F.3d at 226-27.  Mr. McCain alleges that he lied on his employment application when he applied for the position with Macy's Holdings, and that Macy's Holdings suspended him when it learned that contrary to his application, he did have a criminal conviction.  The legal conclusion asserted – that Macy's Holdings subjected Mr. McCain to different terms and conditions – is not supported by specific factual allegations

that would render this claim plausible.  See Albert, 851 F.2d
at 571-72 (intent to discriminate may be alleged by
"specifying instances in which they were 'singled . . . out
for unlawful oppression' in contrast to others similarly
situated.").

To the extent Mr. McCain premises his claims upon a
disparate impact theory, this theory is not recognized under
§ 1981.  See Cancel, 488 Fed. App'x at 521 (claims based upon
a disparate impact theory not recognized under § 1981(a)).
Because the Amended Complaint fails to state a plausible §
1981(a) claim against Macy's Holdings, this claim is
DISMISSED.  Macy's Holdings's Motion to Dismiss is GRANTED.

VI.  Costco and Ms. Ahrens's Motion to Dismiss

The Amended Complaint alleges that Mr. McCain filed a
charge of discrimination against Costco with the EEOC in or
about September 2010.  Mr. McCain and Costco entered into a
settlement agreement on or about March 10, 2012 when it
appeared that the EEOC intended to make a cause finding.  A
dispute later arose between Mr. McCain and Ms. Ahrens
concerning the amount Costco would pay him and whether taxes
would be paid from that amount.  Mr. McCain also objected to

release language that would prevent him from being eligible
to work at any other Costco facility, and Costco continued to
send release documents containing that language.  The Amended
Complaint alleges that Costco and Ms. Ahrens violated Mr.
McCain's First and Fourteenth Amendment rights and that they
are liable pursuant to Title VII, § 1981(a), § 1985(2), §
1985(3), and 5 U.S.C. § 552(a).  Costco and Ms. Ahrens
("Costco Defendants") move to dismiss all claims against them
for failure to state a claim.

As a threshold matter, Costco Defendants argue that all
of Mr. McCain's claims should be dismissed, because Mr.
McCain executed a settlement agreement and full release of
any claims against Costco or its agents on April 9, 2012
("the Release") (Doc. 30-5.)  Costco Defendants have filed a
copy of the Release under seal.  Generally, when "matters
outside the pleading are presented and not excluded by the
court, [a motion to dismiss] shall be treated as one for
summary judgment and disposed of as provided in Rule 56, and
the parties shall be given reasonable opportunity to present
all material made pertinent by such a motion by Rule 56."
Fed. R. Civ. P. 12(b).  Under Rule 10(c), a separate document

32

is not considered outside the pleading, if it is a "written instrument attached to [the complaint] as an exhibit or . . . [is] incorporated . . . by reference." Fed. R. Civ. P. 10(c).

The Second Circuit has explained that, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint "relies heavily upon its terms and effect," thereby rendering the document 'integral' to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (quoting Int'l Audiotext Network v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995). "[W]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." Id. (citation and quotation marks omitted).

Here, the Amended Complaint refers to actual language contained in the Release on several occasions, and a specific provision forms the basis of several of Mr. McCain's claims (Doc. 7 at 9, 10.) The Release is integral to the Amended

Complaint, and Mr. McCain does not challenge the authenticity of the document itself.

Nonetheless, Mr. McCain argues that the Release is illegal and should be set aside because Costco Defendants obtained his signature under coercion or duress (Doc. 39 at 2.)  While the Release itself may not require conversion to summary judgment, evaluating Mr. McCain's defense to enforcement requires a fact-specific inquiry into how the Release was bargained for and whether it was ratified.  <u>See e.g.</u>, <u>Brown v. City of South Burlington</u>, 393 F.3d 337, 343-344 (2d Cir. 2004) (explaining Vermont law of release ratification and waiver); <u>Ben & Jerry's Homemade, Inc. v. LaSoul, Inc.</u>, 983 F. Supp. 504, 507 (D. Vt. 1997) (reciting elements of  economic duress under Vermont law); <u>see also</u> <u>Nicomedez v. AIG</u>, No. 12 CIV 490 (KBF), 2012 WL 5264560, slip op. at *3 (S.D.N.Y. Oct. 16, 2012)(explaining fact-based circumstances under which releases of employment discrimination claims are voidable under Vermont and New York law).

Because the facts necessary to address Costco Defendants' affirmative defense do not appear on the face of

34

the Amended Complaint and require further development, Costco Defendants' Motion to Dismiss is DENIED WITHOUT PREJUDICE. Costco Defendants may renew their arguments in a subsequent motion for summary judgment brought pursuant to Fed. R. Civ. P. 56 and Local Rule 56.

VII.    <u>CCA's Motion to Dismiss</u>

CCA moves to dismiss arguing that the facts alleged against it fail to state any viable legal claims.  The Amended Complaint alleges that CCA conspired with the other Defendants and entered into contracts with the State to provide inmate housing that "offered no mental health, educational or rehabilitation services"  (Doc. 7 at 13).  CCA also allegedly breached 28 V.S.A. § 101(6) and (8) and influenced the State of Vermont "to add criminal sanction to 23 V.S.A. [§] 601" which "gave local police officers the full weight of the state to stop anyone for travel[ing], and operating a non-commercial vehicle the third time." <u>Id</u>. at 14, 17.  The Amended Complaint alleges that CCA: 1) violated Mr. McCain's Thirteenth Amendment rights; 2) violated Title VII; 3) participated in a conspiracy to deprive Mr. McCain of his constitutional rights contrary to § 1985(3); and 4)

35

exercised a government function in violation of the Tenth Amendment.

A. Thirteenth Amendment Claim

Again, the Thirteenth Amendment prohibits "a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." McGarry v. Pallito, 687 F.3d 505, 511 (2d Cir. 2012) (quoting United States v. Kozminski, 487 U.S. 931, 952 (1988)). Mr. McCain does not allege that he has ever worked for CCA, or that CCA ever forced him to work under any threat or use of restraint or coercion. Mr. McCain's allegation that CCA entered in a contract with Macy's Holdings "for cheap convict labor" (Doc. 7 at 14) does not constitute a plausible factual allegation suggesting that Mr. McCain was forced into involuntary servitude, especially given that Macy's Holdings terminated his employment. Mr. McCain's Thirteenth Amendment claim against CCA is DISMISSED pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B).

B.   Title VII Claim

Mr. McCain's Title VII claim also does not state sufficient facts against CCA to survive a motion to dismiss or withstand § 1915(e)(2)(B) scrutiny.  "Title VII, by its terms, applies only to 'employees,'" <u>Salamon v. Our Lady of Victory Hosp.</u>, 514 F.3d 217, 225 (2d Cir. 2008) (citing 42 U.S.C. § 2000e(f)); <u>see</u> <u>also</u> 42 U.S.C. § 2000e-2 (prohibiting discriminatory employment practices).  The Amended Complaint does not allege that Mr. McCain was ever an employee of CCA, nor does it allege any other facts from which the Court might reasonably infer as much.  Accordingly, Mr. McCain's Title VII claim against CCA is DISMISSED pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B).

C. Section 1985 (3) Claim

Section 1985(3) prohibits conspiring "for the purpose of depriving . . . any person or class of persons of the equal protection of the laws."  42 U.S.C. § 1985(3). A § 1985(3) claim "must plead facts that show: 1) a conspiracy; 2) for the purpose of depriving any person or class of persons of the equal protection of the laws or of the equal privileges and immunities under the laws; and 3) an act in furtherance

of the conspiracy; 4) whereby a person is injured in his person or property or deprived of a right or privilege of a citizen." Martinez v. Cnty. of Suffolk, 999 F. Supp. 2d 424, 431 (E.D.N.Y. 2014) (citing Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999)).

The Amended Complaint alleges facts regarding CCA's business contracts and profits, statistics about the rate of incarceration among African-Americans, and a series of conclusory statements attributing CCA's business model to a vague conspiracy to discriminate against African-Americans. Nonetheless, the Court cannot reasonably infer from these allegations that CCA's business model is motivated by a conspiracy against African-Americans. The Supreme Court has explained that a complaint must do more than create the inference of "the mere possibility of misconduct." Iqbal, 556 U.S. at 679. In the § 1985(3) context, the plaintiff must provide facts "supporting a meeting of the minds" indicating an agreement "to achieve an unlawful end." Webb v. Goord, 340 F.3d 105, 111 (2d Cir. 2003). The Amended Complaint alleges that CCA entered into contract with the State for the purpose of earning profit, but none of the facts alleged

suggest a discriminatory motive.  Because the Amended
Complaint does not allege a plausible § 1985(3) claim against
CCA, this claim is DISMISSED.

    D.   Tenth Amendment Claim

    Mr. McCain alleges that CCA "is exercising a government
function in violation of the 10th Amendment[.]" (Doc. 7 at
24.)  The Tenth Amendment reserves to the States certain
"powers not delegated to the United States by the
Constitution[.]" U.S. Const. amd. X.  The Court cannot
discern the factual basis of this claim.  Under Iqbal, the
Court need not infer unconstitutional conduct without
sufficient factual detail to render the claim facially
plausible.  Iqbal, 556 U.S. at 686 ("[c]onclusory statements
without reference to []factual context" do not satisfy Rule
8(a) pleading standard).  Therefore, Mr. McCain's Tenth
Amendment claim against CCA is DISMISSED pursuant to Fed. R.
Civ. P. 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B).

    CCA's Motion to Dismiss is GRANTED, and all claims
against CCA are DISMISSED.

VIII.    <u>Kohl's Stores's Motion to Dismiss</u>

Kohl's Stores moves to dismiss for failure to state a claim, arguing that Mr. McCain's claims are barred for lack of administrative exhaustion or otherwise fail to state viable legal claims.  The Amended Complaint alleges that on or about August 5, 2010, Kohl's stores rescinded a contingent offer of employment it had made to Mr. McCain upon receiving the results of a criminal background check.  Years later, on or about March 2, 2013, Mr. McCain spoke with a human resource manager who told him, "[the] [o]nly criminal convictions we accept are DUI's, nothing else . . . ."  (Doc. 7 at 16.)  After Mr. McCain discussed the issue with an EEOC investigator, Thomas Perez, he decided to apply for a position.  Kohl's Stores's human resource manager told Mr. McCain that "retail theft is the only offense they don't accept."  <u>Id</u>.  Mr. McCain was not aware that he had a retail theft conviction.  Mr. McCain's claims against Kohl's Stores include violations of 42 U.S.C. § 1981(a) and Title VII.[7]

---

[7]  In addition to the claims which appear in the Amended Complaint, Mr. McCain alleges in his Memorandum in Opposition that Kohl's Stores is liable pursuant to § 1985(3), and that Kohl's Stores violated his Thirteenth Amendment rights and retaliated against him pursuant to Title VII.  None of these

A.   Section 1981 Claim

Kohl's Stores argues that the Amended Complaint does not allege sufficient facts to state a plausible § 1981 claim against it and that Mr. McCain's disparate impact theory of liability under § 1981 fails as a matter of law.

Section 1981 "protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." Dominoes Pizza, Inc. V. McDonald, 546 U.S. 470, 474 (2006) (quoting 42 U.S.C. § 1981(a)).  A claim for discrimination under § 1981 requires the plaintiff to allege: 1) plaintiff belongs to a racial minority group; 2) defendant intended to discriminate on the basis of race; and 3) the discrimination concerns an enumerated activity.  See Brown v. City of Oneonta, 221 F.3d 329, 339 (2d Cir. 1999) (citing Milan v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam).  Enumerated activities under the statute include the right "to make and enforce contracts, to sue, be parties, give evidence, and to [have] the full and equal benefit of

---

claims appear on the face of the Amended Complaint, nor can the Court construe the existence of these claims from the facts alleged.  Therefore, the Court does not consider them.

all laws and proceedings for the security of all persons and
property." 42 U.S.C. § 1981(a). Section 1981(a) encompasses
claims for race discrimination in employment. <u>Patterson v.
Cnty. of Oneida</u>, 375 F.3d 206, 224 (2d Cir. 2004).

Here, the Amended Complaint does not allege facts to
suggest any discriminatory intent on the part of Kohl's
Stores. "[A] plaintiff pursuing a claimed violation of §
1981 . . . must show that the discrimination was
intentional[.]" <u>Id</u>. at 226-27 (collecting cases). Intent to
discriminate may be alleged by "specifying instances in which
they were 'singled . . . out for unlawful oppression' in
contrast to others similarly situated." <u>Albert v. Carovano</u>,
851 F.2d 561, 571-72 (2d Cir. 1988). Claims based upon a
disparate impact theory – the theory that a facially-neutral
policy has a disparate impact on members of a particular
minority racial group – are not recognized under § 1981. <u>See
Cancel v. Home Depot</u>, 488 Fed. App'x 520, 521 (2d Cir. 2012)
(citing <u>Gen'l Bldg. Contractors Ass'n v. Pennsylvania</u>, 458
U.S. 375, 391 (1982)).

Mr. McCain alleges that Kohl's Stores "subjected [him]
to different terms and conditions . . . than white persons

similarly situated" by "selective[ly] enforcing criminal
background checks on the [basis] of race" (Doc. 2 at 22.)
However, aside from this general allegation, he does not
allege any specific, plausible facts indicating that Kohl's
Stores selectively enforced its criminal background check
policy, or that it treated Mr. McCain any differently than
similarly-situated white applicants.  Nor does Mr. McCain
allege any other facts to plausibly suggest that Kohl's
Stores, or any of its employees, intentionally discriminated
against Mr. McCain during its hiring process.  Accordingly,
because the Amended Complaint does not allege sufficient
facts to satisfy a required element of a § 1981 claim, this
claim against Kohl's Stores is DISMISSED.

    B.  Title VII Claim

    The Amended Complaint alleges that Kohl's Stores is
liable under Title VII, because it "execut[ed] a neutral
policy which selectively exclude[d] or profile[d] criminal
offenses or economical activities, in a way, that
disproportionately impacts African Americans at a much higher
rate than any other race[.]" (Doc. 7 at 23.)  Mr. McCain
brings this claim pursuant to 42 U.S.C. § 2000e-2(k), which

prohibits the use of "a particular employment practice that causes a disparate impact on the basis of race . . . [.]"  42 U.S.C. § 2000e-2(k).  Mr. McCain attaches to the Amended Complaint a copy of the EEOC Enforcement Guidance: Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964, 2012 WL 1499883 (Apr. 25, 2012) (hereinafter "2012 Enforcement Guidance"). <u>See</u> Doc. 7-1.

Kohl's Stores argues that Mr. McCain's Title VII claim should be dismissed, because Mr. McCain failed to exhaust his administrative remedies,[8] and he does not allege sufficient facts to state a disparate impact claim.

---

[8]  Although this portion of Kohl's Stores's motion seeks dismissal pursuant to Rule 12(b)(1), the Court construes the motion as one brought pursuant to Rule 12(b)(6) for failure to state a claim. <u>See</u> <u>Pietras v. Bd. of Fire Com'rs of Farmingville Fire Dist.</u>,180 F.3d 468, 474 (citing <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 393 (1982); <u>see also</u> <u>Francis v. City of New York</u>, 235 F.3d 763, 768 (2d Cir. 2000) ("[A]s a general matter, the failure to exhaust administrative remedies is a precondition to bringing a Title VII claim in federal court, rather than a jurisdictional requirement.") (quotations and citations omitted).  Likewise, the statute of limitations defense raised by Kohl's Stores is not a jurisdictional matter.  <u>Ghartey v. St. John's Queens Hosp.</u>, 869 F.2d 160, 162 (2d Cir. 1989) (statute of limitations properly raised under Rule 12(b)(6)).

i.    Exhaustion and Statute of Limitations

"Title VII requires that an employment discrimination claimant pursue administrative procedures before commencing a lawsuit and imposes a deadline for the initiation of such procedures." Fitzgerald v. Henderson, 251 F.3d 345, 358-59 (2d Cir. 2001) (citations omitted).  A charge of discrimination must be filed with the EEOC within 180 days of any alleged unlawful employment practice, or within 300 days where there is a state or local agency with authority to grant to seek relief from such a practice. Robles v. Cox & Co., 841 F. Supp. 2d 615, 625 (E.D.N.Y. 2012) (citing 24 U.S.C. § 2000e-5(e)(1)); see also 42 U.S.C. § 1217(a).  Once the administrative process is complete, and the EEOC has issued a "right-to-sue" letter, the plaintiff is considered to have exhausted his administrative remedies.  A plaintiff then must commence a Title VII claim in federal court within 90 days of his receipt of the EEOC's right to sue letter.  42 U.S.C. §§ 2000e-5(f)(1).

In its Motion to Dismiss, Kohl's Stores argues that Mr. McCain "does not – because he cannot – allege that he filed a charge of discrimination with the EEOC or [the VT AGO][.]"

45

(Doc. 52 at 8.)[9]  Because the time for filing a charge of

discrimination has since expired, Kohl's Stores argues that

the administrative exhaustion requirement cannot be

established and the statute of limitations has expired.

However, "a Title VII plaintiff's failure to exhaust his

or her administrative remedies is an affirmative defense[.]"

Burton v. Am. Fed'n of Gov't Emp. 1988, No. 11-CV-1416

(SLT)(LB), 2012 WL 3580399, slip op at *7 (E.D.N.Y. Aug. 17,

2012)(citing Belgrave v. Pena, 254 F.3d 384, 386 (2d Cir.

2001)).  "[A] plaintiff is not required to plead or

demonstrate administrative exhaustion at the pleading stage."

Id. (citing DiPetto v. U.S. Postal Serv., 383 Fed App'x 102,

---

[9] After Mr. McCain attached a copy of an EEOC right-to-sue
letter pertaining to Kohl's Stores to his memorandum opposing the
Motion to Dismiss (Doc. 61-1), Kohl's Stores argued instead that
Mr. McCain failed to bring suit within 90 days of receipt of the
letter (Doc. 67 at 5.)  Generally, the district court has
authority to take judicial notice of an EEOC right-to-sue letter
for purposes of ruling on an exhaustion claim presented in a Rule
12(b)(6) motion even where the document is not attached to the
complaint.  See, e.g., McNight v. Dormitory Auth. of New York,
995 F. Supp. 70, 75 (N.D.N.Y. 1998) (considering as part of
pleadings administrative complaints and determinations by state
enforcement agency and EEOC submitted by both defendants and
plaintiff).  Here, however, viewing the facts alleged in the
light most favorable to Mr. McCain, the Court cannot discern
whether the EEOC's determination applies to the events of August
2010 or March 2013, or whether it applies to an entirely
different incident altogether.

104 (2d Cir. 2010) (summary order)); <u>see</u> <u>also</u> <u>Jones v. Bock</u>, 549 U.S. 199, 216 (holding that "inmates are not required to specially plead or demonstrate exhaustion" under Prison Litigation Reform Act).

Accordingly, administrative exhaustion cannot serve as the basis for dismissing a Title VII claim on a Rule 12(b)(6) motion simply because the complaint does not affirmatively plead exhaustion. <u>See</u> <u>Burton</u>, 2012 WL 3580399, slip op. at *7; <u>cf</u>. <u>Watkins v. Rochester Gen. Hosp.</u>, No. 13-CV-6386 CJS, 2014 WL 1224680, slip op. at *6 (W.D.N.Y. March 25, 2014) (failure to exhaust administrative remedies may be challenged in a motion to dismiss "if the facts supporting the defense . . . appear on the face of the challenged pleading") (quotation marks and citation omitted). Accordingly, the Court declines to dismiss this claim for failure to exhaust, absent additional evidence.

### ii. Failure to State a Claim

Kohl's Stores argues in the alternative that Mr. McCain does not allege statistical information or other evidence demonstrating how Kohl's Stores's criminal background check

policy results in an actual disparate impact on
African-Americans.

Generally, "[t]o establish a prima facie case of
disparate impact under . . . Title VII . . . a plaintiff must
demonstrate that a facially neutral employment policy or
practice had a disparate impact on a protected class." Brown
v. Coach Stores, Inc., 163 F.3d 706, 712 (2d Cir. 1998).
This evidentiary burden requires the plaintiff to "identify
the employment practice allegedly responsible for the
disparities" and "produce statistical evidence showing that
the challenged practice 'causes a disparate impact on the
basis of race . . . .'" Gulino v. New York State Educ. Dept.,
460 F.3d 361, 382 (2d Cir. 2006) (citing §§
2000e-2(k)(1)(B)(i) and 2000e-2(k)(1)(A)(i)).  The burden
then shifts to the employer either to attack plaintiff's
statistical evidence or analysis or to demonstrate that the
policy is "job related" and "consistent with business
necessity." Id. (citing § 2000e-2(k)(1)(A)(i)).

However, at the pleadings stage, "an employment
discrimination plaintiff need not plead a prima facie case of
discrimination," Swierkiewicz v. Sorema N.A., 534 U.S. 506,

515 (2002); see also Johnson v. City of Shelby, 135 S. Ct.
346, 347 (2014) (per curiam) (citing holding in Swierkiewicz
that "a heightened pleading standard in employment
discrimination cases conflicts with Federal Rule of Civil
Procedure 8(a)(2)").  "The prima facie case . . . is an
evidentiary standard, not a pleading requirement[,]" which
allocates the burden of proof.  Id. at 511.  On a motion to
dismiss, the district court reviews the complaint only to
ensure that it "gives respondent fair notice of the basis for
[his] claims."  Boykin v. KeyCorp, 521 F.3d 202, 212 (2d Cir.
2008) (citing Swierkiewicz, 534 U.S. at 512).

Kohl's Stores cites Brown for the proposition that a
disparate impact claimant must "show that the specific factor
challenged under the disparate impact model results in the
discriminatory impact."  Brown, 163 F.3d at 712.  In Brown,
the plaintiff alleged that her employer failed to promote her
and cited EEOC statistics indicating that the percentage of
minority employees at the employer's headquarters location
decreased during the relevant time period.  Id.  The
plaintiff did not directly connect these statistics to any
particular facially-neutral policy, however, and according to

the facts alleged, the overall percentage of minority employees working for the employer also had decreased over the relevant time period. Id. at 712-13. Accordingly, the Second Circuit affirmed the dismissal of the plaintiff's disparate impact claim, because she did "not adequately allege a causal connection between any facially neutral policy [of the defendant's] and the resultant [low] proportion of minority employees." Id. at 712.

Unlike the plaintiff in Brown, however, Mr. McCain identifies Kohl's Stores's facially-neutral "blanket" background check policy (Doc. 7 at 16) as the source of the alleged disparate impact. As a result, he has set forth sufficient allegations to give fair notice of his claim and survive a motion to dismiss, irrespective of whether he alleged statistics demonstrating the impact of Kohl's Stores's policy on African-American candidates. See Jenkins v. New York City Transit Auth., 646 F. Supp. 2d 464, 469-70 (S.D.N.Y. 2009) ("It would be inappropriate to require a plaintiff to produce statistics to support her disparate impact claim before the plaintiff has had the benefit of discovery."); see also Barrett v. Forest Laboratories, Inc.,

No. 12-cv-5224 (RA), 2014 WL 4058683, slip op. at *20

(S.D.N.Y. Aug. 14, 2014) (rejecting argument that plaintiff

must allege statistics to survive motion to dismiss disparate

impact claim).

The plausibility of Mr. McCain's disparate impact claim

is supported by the 2012 Enforcement Guidance attached to the

Amended Complaint (Doc. 7-1), which interprets Title VII as

follows:

> With respect to criminal records there
> is Title VII disparate impact liability
> where the evidence shows that a covered
> employer's criminal record screening
> policy or practice disproportionately
> screens out a Title VII-protected group
> and the employer does not demonstrate
> that the policy or practice is job
> related for the positions in question
> and consistent with business necessity.

EEOC Enforcement Guidance: Consideration of Arrest and

Conviction Records in Employment Decisions Under Title VII of

the Civil Rights Act of 1964, 2012 WL 1499883 at *9 (Apr. 25,

2012); see also Univ. of Texas Sw. Med. Ctr. v. Nassar, 133

S. Ct. 2517, 2540, 186 L. Ed. 2d 503 (2013) ("[t]he position

set out in the EEOC's guidance and compliance manual merits

respect.").  The 2012 Enforcement Guidance cites statistics

on arrest, conviction, and incarceration rates among African American and Hispanic individuals to support the conclusion that "criminal record exclusions have a disparate impact based on race and national origin" and providing "a basis for the Commission to further investigate such Title VII disparate impact charges." EEOC Enforcement Guidance: Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964, 2012 WL 1499883 at *10 (Apr. 25, 2012).

Mr. McCain alleges facts to show that he is an African-American, that he was denied employment at Kohl's Stores based upon the results of a criminal background check, and that under certain circumstances Kohl's Stores's facially-neutral policy has a disparate impact on African-Americans like Mr. McCain. Therefore, the Amended Complaint alleges a plausible claim of disparate impact employment discrimination necessary to survive a motion to dismiss. Kohl's Stores's Motion to Dismiss is DENIED IN PART without prejudice to renew this argument on a motion for summary judgment.

IX.  <u>State of Vermont's Motion to Dismiss</u>

The State moves to dismiss all claims against it arguing that: 1) Mr. McCain lacks standing to pursue his § 1983 and § 1985 claims; 2) Mr. McCain's claims are barred by the doctrine of sovereign immunity; 3) Mr. McCain's § 1983 and § 1985 allegations fail to state a claim because states and state agencies are not "persons" for purposes of both statutes (Doc. 56.)

The Amended Complaint alleges that through a "work share" agreement with the EEOC, the State has engaged in a "hub conspiracy" with CCA, the EEOC, and other states to "perpetuate the adverse impact [of incarceration] upon African Americans[,]" such as Mr. McCain, and "to assert pressure, to bring about a criminal conviction."  (Doc. 7 at 11.)  The Amended Complaint further alleges that the State violated 28 V.S.A. § 101(6) and (8) when it entered into inmate housing contracts with CCA (Doc. 7 at 14) and that the enactment of 23 V.S.A. § 601 furthered the conspiracy against African-Americans and caused "indirect injury" to Mr. McCain (Doc. 7 at 17.)  Mr. McCain brings his claims pursuant to 42 U.S.C. § 1983 (Fifth, Thirteenth, and Fourteenth Amendment

violations), § 1985(2), § 1985(3), and 42 U.S.C. § 2000(e)-2(k) (Title VII violations).  In addition to compensatory and punitive damages, Mr. McCain seeks an order directing the State to end its contract with CCA and "to set up a system that regulate[s] how private employers collect [and] construe[] information from a Court" (Doc. 7 at 25.)

Although the State brings its motion pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, the State's standing and sovereign immunity arguments raise issues of subject matter jurisdiction that the Court must consider pursuant to Fed. R. Civ. P. 12(b)(1).  See Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 85 (2d Cir. 1983) (discussing jurisdictional nature of Article III standing requirements) and Wake v. United States, 89 F.3d 53, 57 (2d Cir. 1996) (sovereign immunity is "jurisdictional in nature" and constitutes grounds for dismissal pursuant to Rule 12(b)(1)); see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

A. Section 1983 and 1985 Claims

This Court lacks subject matter jurisdiction to adjudicate Mr. McCain's § 1983 and § 1985 claims against the State of Vermont. The Eleventh Amendment states: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has interpreted this provision to bar suits against state governments by a state's own citizens. See Hans v. Louisiana, 134 U.S. 1, 15 (1890). Unless a state consents to suit or provides an express or statutory waiver of immunity, the Eleventh Amendment bars suits in federal court against both states and state agencies. Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006) (citing Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997)); see also Wake, 89 F.3d at 57 (sovereign immunity doctrine is jurisdictional).

Mr. McCain argues that the State has waived any Eleventh Amendment protection by seeking an extension of time to respond to the Amended Complaint. A waiver of Eleventh Amendment immunity by a state must be unequivocally expressed. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99 (1984). The State of Vermont has preserved its immunity under the Eleventh Amendment. See 12 V.S.A. § 5601(g); see also Papasan v. Allain, 478 U.S. 265, 276 (1986) (state and state agency immunity from suits in federal courts "exists whether the relief sought is legal or equitable"). Not only was this issue properly raised in the State's Motion to Dismiss, (and therefore not waived,) but as a matter of subject matter jurisdiction, Eleventh Amendment immunity may be raised at any time. See McGinty v. New York, 251 F.3d 84, 94 (2d Cir. 2001). The Court concludes that the State has not waived its sovereign immunity defense here.

To the extent Mr. McCain argues that the State deprived him of his constitutional rights contrary to 42 U.S.C. §§ 1981, 1983 and 1985, the State's sovereign immunity bars those claims as well. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 66-71 (1989) (Section 1983 does not

override immunity of the States); Wagner v. Connecticut Dept. of Corr., 599 F. Supp. 2d 229, 238 (D. Conn. 2009); True v. N.Y. State Dept of Corr. Servs., 613 F. Supp 27, 31 (W.D.N.Y. 1984) (collecting cases dismissing § 1983 and § 1985 claims on Eleventh Amendment grounds).

Mr. McCain also argues that he is entitled to prospective injunctive relief pursuant to the Ex Parte Young doctrine, citing Ford v. Reynolds, 316 F.3d 351, 354-55 (2d Cir. 2003). The Ex Parte Young doctrine provides a narrow exception to the principle of sovereign immunity that allows a plaintiff to bring suit for injunctive relief against a state official. See CSX Transp. v. New York State Office of Real Prop. Servs., 306 F.3d 87, 98 (2d Cir. 2002) (citing Ex Parte Young, 209 U.S. 123 (1908)). Mr. McCain's claims do not satisfy this narrow exception, because states and state agencies are not proper parties. See Bland v. New York, 263 F. Supp. 2d 526, 535 (E.D.N.Y. 2003); Pratesi v. New York Unified Court Sys., No. 08-4828 (DRH)(MLO), 2010 WL 502950, slip op. at *5 (E.D.N.Y. Feb. 9, 2010). Because Mr. McCain's § 1983 and § 1985 claims against the State are barred by the

doctrine of sovereign immunity and do not satisfy the <u>Ex
Parte</u> <u>Young</u> exception, these claims are DISMISSED.

    B. Title VII Claims

    Mr. McCain's remaining cause of action against the – his
Title VII claim – fails to state a claim on which relief can
be granted.  Mr. McCain correctly cites <u>Fitzpatrick v.
Bitzer</u>, 427 U.S. 445, 455 (1976), for the principle that
Eleventh Amendment immunity does not shield states from Title
VII liability.  However, <u>Fitzpatrick</u> applies to actions
brought by former state employees who sue the state in its
capacity as an employer.  <u>Id.</u> at 448; <u>see</u> <u>also</u> 42 U.S.C. §
2000e-2 (enumerating unlawful *employment* practices).

    Title VII does not provide a private right of action
against a state government where the plaintiff does not
allege that he or she was employed by the state.  <u>See</u> <u>Baba v.
Warren Mgmt. Consultants, Inc.</u>, 882 F. Supp 339, 342
(S.D.N.Y. 1995) (citing <u>Polk v. Kramarsky</u>, 711 F.2d 505 (2d
Cir.), <u>cert.</u> <u>denied</u>, 464 U.S. 1000 (1983) (holding that no
cause of action exists under Title VII against enforcement
agency)).  Accordingly, because Mr. McCain does not allege

that he was a state employee, his Title VII claim against the
State is DISMISSED pursuant to Fed. R. Civ. P. 12(b)(6).  The
State's Motion to Dismiss is GRANTED, and all claims against
the State are DISMISSED.

X.        Federal Defendants' Motions to Dismiss

     The Amended Complaint alleges that EEOC, Ms. Berrien,
Mr. Sanders, and Mr. An ("Federal Defendants") conspired with
CCA and the State to increase rates of incarceration among
African-Americans.  As evidence of this conspiracy, the
Amended Complaint cites the EEOC's delegation of Title VII
enforcement authority to the State, which allegedly was
intended to "perpetuate the adverse impact upon African
Americans[.]" (Doc. 7 at 11.)  Additionally, when the EEOC
issued its 2012 Enforcement Guidance, the Commission, through
its Chair, Ms. Berrien, "never gave [Mr. McCain] notice or
hearing that would've protected him from such arbitrary
decision[-]making" thereby, "authoriz[ing] these [G]uidelines
to abrogate his property interest to enter into contracts
[and] to engage in any of the common occupations of life."
(Doc. 7 at 6.)

The Amended Complaint alleges that on December 12, 2012, Mr. An, EEOC Boston Field Office Enforcement Supervisor, instructed Mr. McCain to give Ms. Ahrens his social security number, and "acted in concert with Costco[.]" (Doc. 7 at 15.) Mr. Sanders, who was then serving as an EEOC Area Supervisor, told Mr. McCain over the phone that he "knew about the Private Prisons Industry, along with the adverse impact it had on minorities." (Doc. 7 at 9.) The EEOC also allegedly "gave bonuses to investigators with the most no cause findings to charges alleging racial discrimination at the end of the year[.]" (Doc. 7 at 15.)

Mr. McCain's claims against the EEOC include violations of his Fifth, Thirteenth, and Fourteenth Amendment rights, violations of Title VII, and conspiracy to deprive him of constitutional rights pursuant to § 1985(2) and (3). He brings suit against Ms. Berrien, Mr. Sanders, and Mr. An in both their official and individual capacities. His claims against Ms. Berrien include violations of his Fifth and Fourteenth Amendment Rights and § 1985. His claims against Mr. An and Mr. Sanders include violations of § 1986 for failure to prevent wrongful civil rights violations.

Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) on sovereign immunity and qualified immunity grounds and pursuant to Fed. R. 12(b)(6) for failure to state a claim.

A.    Fourteenth Amendment Claims Generally

Mr. McCain's Fourteenth Amendment claims against the Federal Defendants are not legally cognizable, because the Fourteenth Amendment does not apply to the federal government, its agencies, or its officers.  See Washington v. Sec'y of Health and Human Serv., 693 F. Supp. 569, 574 (N.D. Ohio 1988) ("the commands of the fourteenth amendment are addressed only to a *state* or those acting under color of its authority").  Therefore, all Fourteenth Amendment claims against EEOC and against Ms. Berrien, Mr. Sanders, and Mr. An, in their official and individual capacities, are DISMISSED.

B.    Federal Agency and Official Capacity Claims

i.    Sovereign Immunity

The doctrine of sovereign immunity "shields the Federal Government and its agencies from suit." F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994) (citing Loeffler v. Frank, 486 U.S. 549, 554 (1988); Fed. Hous. Admin. v. Burr, 309 U.S. 242, 244 (1940)).  Sovereign immunity protection also applies to claims against federal employees acting in their official capacity.  Kentucky v. Graham, 473 U.S. 159, 166-67 (1985); Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994).  Under this doctrine, "the United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued define that court's jurisdiction to entertain the suit."  United States v. Mitchell, 445 U.S. 535, 538 (1980) (citing United States v. Sherwood, 312 U.S. 584, 586 (1941)); see also Presidential Gardens Assocs. v. United States, 175 F.3d 132, 139 (2d Cir. 1999) ("In any suit in which the United States is a defendant, there must be a cause of action, subject matter jurisdiction, and a waiver of sovereign immunity.").

"The sovereign immunity of the United States may only be waived by federal statute[.]"  Presidential Gardens, 175 F.3d at 139.  Because the doctrine of sovereign immunity is

jurisdictional, "the plaintiff bears the burden of establishing that [his] claims fall within an applicable waiver." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Meyer, 510 U.S. at 475 (1994)). The Court will address each of the potential sources of Congressional waiver raised by the Amended Complaint.

*Title VII*

To the extent Mr. McCain brings discrimination or retaliation claims pursuant to Title VII against EEOC or its employees in their official capacities, "[c]ourts have repeatedly held that the United States has not waived sovereign immunity for suits against the EEOC based on the EEOC's handling of an employment discrimination charge." McKoy v. Potter, No. 08 Civ. 9428 (PKC), 2009 WL 1110692, at *5 (S.D.N.Y. Apr. 21, 2009) (collecting cases); see also Ward v. E.E.O.C., 719 F.2d 311, 313-14 (9th Cir. 1983) (no cause of action against EEOC for employees of third parties); Gertskis v. U.S. E.E.O.C., No. 11 Civ. 5830 (JMF), 2013 WL 1148924, at *12 (S.D.N.Y. March 20, 2013) (dismissing Title VII claims against EEOC and EEOC employees in their official

capacities on sovereign immunity grounds).[10]  Accordingly, all Title VII claims against EEOC and against Ms. Berrien, Mr. An, and Mr. Sanders in their official capacities are DISMISSED.

*Constitutional Civil Rights Claims*

Mr. McCain alleges that the EEOC and Ms. Berrien are liable to him for monetary damages pursuant to §§ 1985(2) and (3), and that Mr. An and Mr. Sanders are liable pursuant to § 1986.  He also alleges, pursuant to § 1983, that EEOC violated his Fifth Amendment rights to Due Process, as well as the Thirteenth Amendment prohibition against involuntary servitude.  So much as Mr. McCain brings claims for monetary damages against the EEOC and its employees in their official capacities, these claims barred by the doctrine of sovereign immunity.

---

[10]   The only Congressional waiver of sovereign immunity, 42 U.S.C. § 2000e-6(b), applies to federal employees or applicants for federal employment against their federal employer. Mr. McCain does not allege, nor do the facts suggest, that Mr. McCain was an EEOC employee or an applicant for employment with the EEOC.

As the United States Supreme Court explained in Meyer, sovereign immunity bars plaintiffs from bringing constitutional tort claims against federal agencies and federal officials. Meyer, 510 U.S. at 485-86 (holding that Fifth Amendment Due Process claim for monetary damages cannot be brought against federal agency); see also; Cato v. United States, 70 F.3d 1103, 1110-11 (9th Cir. 1995) (affirming dismissal of Thirteenth Amendment claim against United States on sovereign immunity grounds); Castro v. United States, 34 F.3d 106, 110 (2d Cir. 1994) ("the United States has not waived its sovereign immunity with respect to claims that its employees have committed constitutional torts"); Zynger v. Dep't of Homeland Sec., 615 F. Supp. 2d 50, 56 (E.D.N.Y. 2009) aff'd, 370 F. App'x 253 (2d Cir. 2010) (dismissing Fifth Amendment claims against federal agency defendants).[11]

---

[11]  In his memorandum in opportunition to Federal Defendants' Motion to Dismiss, Mr. McCain raises allegations for the first time that Federal Defendants' violated his First Amendment rights as well.  On a Rule 12(b)(6) motion, the Court does not consider new allegations outside of the complaint.  However, to the extent these claims can be construed from a liberal reading of the complaint, any First Amendment claims brought against EEOC and its employees in their official capacities are barred by the doctrine of sovereign immunity as well.  See Goff v. United States, No. 98 Civ. 3874(RO), 2001 WL 1103273, at *2 (S.D.N.Y. 2001).

Claims seeking monetary damages for federal constitutional rights violations against federal agencies and their employees must be brought under Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971), against individual federal officials.  See Correct. Servs. Corp. v. Malesko, 534 U.S. 61, 70-71 (2001) (observing that an implied damages action brought directly against federal agencies would lack deterrent effect that results from threat of individual capacity liability).  Because the doctrine of sovereign immunity bars claims for monetary damages brought pursuant to § 1983 against the federal government, all constitutional claims brought against the EEOC and against Ms. Berrien, Mr. Sanders, and Mr. An in their official capacities are DISMISSED.

The reasoning advanced in Meyer also applies to claims brought pursuant to § 1985 and § 1986. See Unimex v. Dept. Hous. and Urban Dev., 594 F.2d 1060, 1061 (5th Cir. 1979) ("the United States has not consented to suit under the civil rights statutes); see also Hayes v. Fed. Bureau of Investigation, 562 F. Supp. 319, 321 n.3 (S.D.N.Y. 1983) (observing that § 1983 and § 1985(3) claims against FBI

barred on sovereign immunity grounds and collecting cases);

<u>Morpurgo v. Bd. of Higher Ed. in City of New York</u>, 423 F.

Supp. 704, 714 (S.D.N.Y. 1976) (holding that § 1983 and §

1985 do not waive sovereign immunity).[12]  Accordingly, Mr.

McCain's § 1985(2) and (3) and § 1986 claims against the EEOC

and against Ms. Berrien, Mr. Sanders, and Mr. An in their

official capacities are DISMISSED as well.

*Administrative Procedure Act*

Mr. McCain also seeks declaratory and injunctive relief

against the EEOC and Ms. Berrien, in her official capacity as

EEOC chair, pertaining to the issuance of the 2012

Enforcement Guidance.  Mr. McCain argues that he is entitled

to prospective injunctive relief under the doctrine of <u>Ex</u>

<u>Parte Young</u>, 209 U.S. 123 (1908).  However, "since 1976,

Federal courts have looked to § 702 of the Administrative

Procedure Act ("APA"), 5 U.S.C. § 702, to serve the purposes

_____

[12]  The Amended Complaint cites 28 U.S.C. § 1491 ("the Tucker
Act") (Doc. 7 at 1) as a basis for jurisdiction over these federal
constitutional claims.  However, the Tucker Act "does not create any
substantive right enforceable against the United State for money
damages." <u>United States v. Testan</u>, 424 U.S. 392, 398 (1976); <u>accord</u>
<u>United States v. Navajo Nation</u>, 556 U.S. 287, 290 (2009) (Tucker Act
does not create substantive rights but is a "jurisdictional
provision[] that operate[s] to waive sovereign immunity for claims
premised on other sources of law").

of the *Ex Parte Young* fiction in suits against federal officers." <u>EEOC v. Peabody Western Coal Co.</u>, 610 F.3d 1070, 1085 (9th Cir. 2010).

Under § 702, "[a] person suffering legal wrong because of an agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof." 5 U.S.C. § 702. Section 702, "waives sovereign immunity in an action seeking equitable relief from wrongful agency action, except were (i) the action also seeks monetary relief; (ii) there is an adequate remedy at law; or (iii) the action is precluded from judicial review by statute or committed by law to agency discretion." <u>Polanco v. U.S. Drug Enforcement Admin.</u>, 158 U.S. 647, 652 (2d Cir. 1998) (citing 5 U.S.C. §§ 701 and 702).

Federal Defendants argue that the APA does not provide the relief Mr. McCain seeks, because the actions alleged in the Amended Complaint are discretionary. Indeed, under 5 U.S.C. § 704, judicial review is only available where an agency action is "made reviewable by statute" or the action

is a "final agency action for which there is no other
adequate remedy in a court[.]" 5 U.S.C. § 704.

The Supreme Court has established a two-part test for
determining whether agency action is final. See Bennett v.
Spear, 520 U.S. 154, 177-78 (1997). First, "the action must
mark the consummation of the agency's decision making
process[.]" Id. (quotation marks and citation omitted).
Second, "the action must be one by which rights or
obligations have been determined or from which legal
consequences will flow[.]" Id. at 178 (quotation marks and
citation omitted). The agency decision must "inflict an
actual, concrete injury" upon the party seeking judicial
review. Williamson Cty. Regional Planning v. Hamilton Bank,
473 U.S. 172, 193 (1985).

With respect to the processing, investigation, and final
determination of claims rendered in response to Mr. McCain's
administrative charges, "EEOC's negligence or inaction in the
internal processing of a complaint has no determinate
consequences because such actions are merely preparatory to a
lawsuit by either the EEOC or the charging party[.]" See Ward

v. EEOC, 719 F.2d 311, 313 (9th Cir. 1983) (citing Georator Corp v. EEOC, 592 F.2d 765, 767-68(4th Cir. 1979); see also Adams v. EEOC, Civil No. 10-3028, 2010 WL 2606468, at *2 (dismissing *pro se* complaint against EEOC for lack of reviewable final agency action).  As the Ninth Circuit explained in Ward, a charging party seeking review under § 704 cannot show the absence of an adequate remedy in court, because, just as Mr. McCain has shown here, the charging party can sue his employer in federal court.  Id.

Mr. McCain also seeks a declaration that EEOC's 2012 Enforcement Guidance was issued without providing his with notice and an opportunity to be heard, as well as an injunction "ordering the U.S. EEOC, and Ms. Berrien or her successor, to change the EEOC compliance manual regarding criminal convictions, making it unlawful discrimination for a private employer[] to solicit criminal information from an employment application or use the information inappropriate[ly]."  (Doc. 7 at 24-25.)

The Court concludes that even assuming the 2012 Enforcement Guidance is reviewable under § 704, Mr. McCain

lacks standing to obtain the relief he seeks in federal court.  See Cent. States Se. & Sw. Areas Health and Welfare Fund v. Merck-Medco, 433 F.3d 181, 198 (2d Cir. 2005) ("Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised *sua sponte*."); see also Town of Sherburne v. Espy, 861 F. Supp. 16, 18 (D. Vt. 1994) (observing that to establish waiver of sovereign immunity pursuant to § 702, plaintiff must establish standing).

To establish constitutional standing under Article III, a plaintiff must allege a concrete injury, or that such an injury is "imminent" or "certainly impending."  See Clapper v. Amnesty Int'l, 133 S. Ct. 1138, 1147 (2013).  The standing injury alleged also must be traceable to the defendant's challenged conduct and able to be redressed by the relief sought.  Id.  Although Mr. McCain alleges that several prospective employers and former employers either declined to hire him or terminated him due to his criminal history, he cannot show that this injury is traceable to the 2012 Enforcement Guidance or that it could be redressed if the EEOC issued a different guidance document instead.

71

Neither EEOC, nor Ms. Berrien, nor the 2012 Enforcement Guidance are responsible for the hiring or termination decisions of private employers or for the policies they utilize to make hiring determinations. Furthermore, the 2012 Enforcement Guidance does not pre-determine the outcome of EEOC's administrative investigation process or enforcement actions. Federal agency guidance documents "[have] force only to the extent the agency can persuade a court to reach the same conclusion[.]" AT&T Co. v. EEOC, 270 F.3d 973, 976 (D.C. Cir. 2001) (holding that EEOC's expression of how it views the law does not constitute final agency action); see also Vance v. Ball State Univ., 133 S.Ct. 2434, 2444, n.4 (2013) (rejecting legal theories summarized in EEOC Guidance document upon concluding that it lacked "power to persuade" and did not warrant deference under Skidmore v. Swift & Co., 323 U.S. 134 (1944)).[13]  Because Mr. McCain cannot meet the

---

[13] EEOC v. Freeman, 961 F. Supp. 783, (D. Md. 2013), cited by Mr. McCain, further illustrates this point, in that EEOC's policy positions do not pre-determine whether a court will interpret Title VII in the same manner under a given set of facts.  There, EEOC did not prevail in the action against an employer where it premised its case on the same type of disparate impact theory detailed in the 2012 Enforcement Guidance.  See id. at 800 ("[t]hough it is theoretically possible that one or more of Defendant's background check considerations causes a disparate impact on certain classes, the EEOC has failed to demonstrate

required elements of Article III standing necessary to advance a claim for equitable relief under § 702, Mr. McCain's claims for declaratory and injunctive relief against Federal Defendants pursuant to § 702 are DISMISSED.

*Privacy Act*

Mr. McCain brings a claim for damages pursuant to 5 U.S.C. § 552(g)(1) ("the Privacy Act"), alleging that Mr. An violated 5 U.S.C. § 552a(a)(7) when he told Mr. McCain to disclose his Social Security number to Costco and Ms. Ahrens to facilitate performance of the Costco settlement agreement (Doc. 7 at 23.)  The Privacy Act provides a limited waiver of sovereign immunity by allowing plaintiffs to recover actual damages against the Government for intentional or willful disclosure of certain protected information.  See Fed. Aviation Admin. v. Cooper, 132 S. Ct. 1441, 1448-49 (2012).

However, Mr. McCain does not allege that the EEOC or Mr. An disclosed his Social Security number, but that Mr. An "directly, or indirectly caused" Mr. McCain to do so himself (Doc. 7 at 23.)  "[L]iability for nonconsensual disclosures is limited by the 'rule of retreival,' which requires that

which factor is the alleged culprit.").

the information disclosed be 'directly or indirectly retrieved from a system of records,'" <u>Kreiger v. Dept. of Justice</u>, 529 F. Supp.2d 29, 47 (D.D.C. 2008) (citing <u>Fisher v. Nat'l Inst. of Health</u>, 934 F. Supp. 464, 473 (D.D.C. 1996), <u>aff'd without opinion</u>, 107 F.3d 922 (D.C. Cir. 1996)). Accordingly, because Mr. McCain does not allege that Mr. An retrieved his Social Security number or improperly disclosed it, Mr. McCain's Privacy Act claim is DISMISSED pursuant to Fed. R. Civ. P. 12(b)(6).

*Federal Tort Claims Act Certification*

The Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2674, provides a limited waiver of sovereign immunity for common law torts. Perhaps out of caution, the United States has noticed its intent to be substituted on behalf of the EEOC, as well as on behalf of Ms. Berrien, Mr. Sanders, and Mr. An in their official capacities, by certifying that the employees were acting within the scope of their employment pursuant to 28 U.S.C. § 2679(d) and 28 C.F.R. § 15.4 (Doc. 60-1.) Mr. McCain challenges substitution, arguing that he has not alleged any common law tort claims against these Defendants and that the EEOC employees were not acting within

74

the scope of their employment when they carried out the acts alleged (Doc. 78 at 37-38.)   The district court has authority to review the Government's § 2679(d) certification *de novo*. McHugh v. Univ. of Vermont, 966 F.2d 67, 70 (2d Cir. 1992). Guttridge v. United States, 927 F.2d 970, 731 (2d Cir. 1991). However, because the Court does not construe any common law tort claims against the Federal Defendants, and Federal Defendants' motions to dismiss are granted on other grounds, the certification of substitution is DENIED WITHOUT PREJUDICE as moot.

## *Mandamus Relief*

Mr. McCain urges the Court to grant relief against the Government pursuant to 28 U.S.C. § 1361, ("the Mandamus Act"), which grants the district court jurisdiction "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  "[M]andamus is an extraordinary remedy, intended to aid only those parties to whom an official or agency owes 'a clear nondiscretionary duty.'" Escaler v. U.S. Citizenship and Immigrations Servs., 582 F.3d 288, 292 (2d Cir. 2009).  Here, Mr. McCain is not entitled to mandamus

relief, because EEOC enforcement actions are discretionary. See Newsome v. EEOC, 301 F.3d 227, 231 (5 Cir. 2002) ("Because the nature and extent of the investigation are discretionary, [plaintiff] does not have a 'clear right' to a writ of mandamus"); Klip v. EEOC, No. Civ. A. 85-1269, 1986 WL 5149, *2 (M.D. Pa. Mar. 11, 1986) (citations omitted). Therefore, Mr. McCain's mandamus claim is DISMISSED.

B. Claims Against Individual Federal Defendants

Mr. McCain also brings suit for Fifth Amendment violations against Ms. Berrien in her individual capacity under Bivens and pursuant to § 1985, and against Mr. An and Mr. Sanders in their individual capacities under § 1986.

Bivens provides "an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights" and serves as a "federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983." Iqbal, 556 U.S. at 675 (quotation marks and citations omitted). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Id. at 676. Instead, "a

plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Id.

Further, "[w]here the claim is invidious discrimination in contravention of the First and Fifth Amendments . . . the plaintiff must plead and prove that the defendant acted with discriminatory purpose." Id. (citations omitted). "[P]urposeful discrimination requires . . . a decisionmaker's undertaking a course of action because of, not merely in spite of [the action's] adverse effects upon an identifiable group." Id at 676-77 (quotation marks and citation omitted).

Even assuming that any of the actions or omissions alleged on the part of Ms. Berrien otherwise could be construed as stating a cognizable constitutional rights claim, the Amended Complaint does not allege any plausible facts to suggest that she undertook a course of action undertaken with the intent of having an adverse effect on a protected class. See Iqbal, 556 U.S. at 680 (plaintiff's complaint must "nudge[] [his] claims of invidious discrimination across the line from conceivable to plausible."); see also Caraveo v. EEOC, 96 Fed. App'x 738,

741 (2d Cir. 2004) (affirming dismissal of Due Process claims against EEOC employees sued in their individual capacities); Marshall v. Nat'l Ass'n of Letter Carriers BR36, No. 03 Civ. 1361(LTS), 2004 WL 2202547, at *2 (S.D.N.Y. Sept. 30, 2004) ("there cannot be a colorable claim for denial of due process" where plaintiff had opportunity to pursue discrimination claims in federal court). Therefore, Mr. McCain's Fifth Amendment claims against Ms. Berrien brought against her in her individual capacity are DISMISSED.

Mr. McCain's § 1985 claims against Ms. Berrien also fail to state any claim on which relief can be granted. With respect to § 1985(2), Mr. McCain does not allege that Ms. Berrien sought to deter him "by force, intimidation, or threat" from attending or testifying in court. See 42 U.S.C. § 1985(2). Likewise, a properly-pled § 1985(3) claim "must provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003); see also Ostrer v. Aronwald, 567 F.2d 551, 553 (2d Cir. 1977) ("[C]omplaints containing only conclusory, vague, or general allegations of conspiracy to

deprive a person of constitutional rights will be
dismissed."). No factual basis exists here to suggest a that
Ms. Berrien entered into an agreement with others to violate
Mr. McCain's constitutional rights, or those similarly-
situated. Therefore, Mr. McCain's § 1985(2) and § 1985(3)
claim against Ms. Berrien are DISMISSED.

Because the Amended Complaint does not sufficiently
plead a § 1985 claim, Mr. McCain's § 1986 claims against Mr.
An and Mr. Sanders necessarily must fail as well. See White
v. St. Joseph's Hosp., 369 Fed. App'x 225, 226 (2d Cir. 2010)
(Section 1986 claim necessarily failed where plaintiff failed
to state a claim under § 1985); Wang v. Miller, 356 Fed.
App'x 516, 519 (2d Cir. 2009) ("Section 1986 claims are
contingent upon a valid Section 1985 claim"). Mr. McCain's §
1986 claims against Mr. An and Mr. Sanders in their
individual capacities are DISMISSED pursuant to Fed. R. Civ.
P. 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B).

Accordingly, Federal Defendants' Motions to Dismiss
(Docs. 60 and 63) are GRANTED, and all claims against Federal
Defendants are DISMISSED.

XI.    <u>Leave to Amend</u>

The Second Circuit has held that district courts should not dismiss the claim of a self-represented party without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." <u>Thompson v. Carter</u>, 284 F.3d 411, 416 (2d Cir. 2002); <u>see also</u> Fed. R. Civ. P. 15(a)(2) ("the court should freely give leave [to amend] when justice so requires"). Accordingly, the court hereby GRANTS Mr. McCain leave to file a Second Amended Complaint.

XII.    <u>Motion for Sanctions</u>

Mr. McCain moves for sanctions pursuant to Fed. R. Civ. P. 11(b)(1) against Attorney Eric D. Jones, counsel for Macy's Holdings, and his law firm, Downs, Rachlin, Martin, PLLC ("DRM") (Doc. 64.) Mr. McCain objects to the following sentence in the Motion to Dismiss filed by Attorney Jones: "[w]hile the many plot lines are intriguing and dramatic, the allegations against Macy's are relatively straight forward." (Doc. 13 at 2.) Mr. McCain argues that this sentence was "asserted for improper purposes," and he objects to Attorney

Jones's description of Mr. McCain's litigation history (Doc. 64 at 4.) He also alleges that when he went to the DRM offices to personally serve a copy of a pleading he had filed, DRM staff initially refused to accept the documents and asked him to leave in a manner that was harassing (Doc. 64 at 4-5.) Mr. McCain seeks a monetary sanction of $25,000.

Rule 11(b)(1) provides that when signing and presenting a pleading to the Court, the attorney certifies, in relevant part, that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> . . .
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery

. . .

Fed. R. Civ. P. 11(b). Rule 11(c)(1) provides that upon determining that Rule 11(b) has been violated, "the court may impose an appropriate sanction on any attorney, law firm, or part that violated the rule . . . ." Fed. R. Civ. P.

11(c)(1).   "[D]istrict courts generally have wide discretion in deciding when sanctions are appropriate." <u>Sanko S.S. Co., Ltd.v. Galin</u>, 835 F.2d 51, 53 (2d Cir. 1987).

The Court concludes that neither Attorney Jones, nor DRM, violated Rule 11(b).  As to the allegations regarding Mr. McCain's attempts to personally serve a pleading on Attorney Jones at DRM's offices, Rule 11 only applies to "a pleading, written motion, or other paper" or other matters represented to the Court.  <u>See</u> Fed. R. Civ. P. 11(b).  The Rules do not contemplate court oversight of the personal interactions described by Mr. McCain.

With respect to the summary of Mr. McCain's litigation history in the pleading filed by Attorney Jones, a review of the docket indicates that Mr. McCain has, indeed, filed lawsuits against a variety of Defendants that allege a variety of legal claims.  <u>See</u> <u>e.g.</u>, <u>McCain v. Jan Company/Burger King</u>, No. 1:11-CV-00143-jgm, 2014 WL 2326516 (D.Vt. May 29, 2014); <u>McCain v. Buffalo Wild Wings</u>, No. 1:11-cv-143-jgm, 2013 WL 6825098 (D.Vt. Dec. 23, 2013); <u>McCain v. City of Burlington</u>, No. 2:09-CV-247, 2011 WL 883696 (D.Vt. March 11, 2011); <u>McCain v. Hermann Law Office</u>, No. 5:09-cv-

165-cr, 2010 WL 3322708 (D.Vt. July 7, 2010).  The Court
rejects the argument that the Motion to Dismiss was presented
for an improper purpose or that it lacks an evidentiary
basis.

Accordingly, because Mr. McCain has not demonstrated any
violation of Rule 11(b), Mr. McCain's Motion for Sanctions
(Doc. 64) is DENIED.

<u>CONCLUSION</u>

For the reasons set forth above, Officer Benoit's Motion
to Dismiss (Doc. 9) is GRANTED and all claims against Officer
Benoit are DISMISSED; Officer Chamberlain's Motion to Dismiss
(Doc. 11) is GRANTED IN PART, DENIED IN PART; Macy's
Holdings's Motion to Dismiss (Doc. 13) is GRANTED and all
claims against Macy's Holdings are DISMISSED; Costco and Ms.
Ahrens's Motion to Dismiss (Doc. 30) is DENIED WITHOUT
PREJUDICE; CCA's Motion to Dismiss (Doc. 36) is GRANTED and
all claims against CCA are DISMISSED; Kohl's Stores's Motion
to Dismiss (Doc. 52) is GRANTED IN PART, DENIED IN PART; the
State's Motion to Dismiss (Doc. 56) is GRANTED and all claims
against the State are DISMISSED; the Motion to Dismiss filed

by the United States, EEOC, Mr. An (official capacity), Ms.
Berrien (official capacity), and Mr. Sanders (official
capacity) (Doc. 60) is GRANTED and all claims against EEOC,
Mr. An (official capacity), Ms. Berrien (official capacity),
and Mr. Sanders (official capacity) are DISMISSED; the Motion
to Dismiss filed by Mr. An (individual capacity) and Ms.
Berrien (individual capacity) (Doc. 63) is  GRANTED and all
claims against Ms. Berrien (individual capacity) and Mr. An
(individual capacity) are DISMISSED; Mr. McCain's Motion for
Sanctions (Doc. 64) is DENIED; and Mr. McCain's Motion to
Reconsider (Doc. 82) is DENIED.  All claims against Mr.
Sanders (individual capacity) are DISMISSED pursuant to 28
U.S.C. § 1915(e)(2)(B).

Further, Mr. McCain is GRANTED leave to file an Second
Amended Complaint within thirty (30) days of the date of the
this Order.  Any amended filing shall be entitled "Second
Amended Complaint" and must allege all claims and name all
Defendants Mr. McCain intends to include, as the Second
Amended Complaint will supersede the original Complaint in
all respects.  Failure to file a Second Amended Complaint
within thirty (30) days may result in final dismissal of the

claims dismissed herein.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 17th of March, 2015.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge