UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ZACK MCCAIN III,                    :
                                    :
        Plaintiff,                  :
                                    :
    v.                              :    Case No. 2:14-cv-92
                                    :
UNITED STATES OF AMERICA;           :
CORRECTIONS CORPORATION             :
OF AMERICA; EQUAL                   :
EMPLOYMENT OPPORTUNITY              :
COMMISSION; STATE OF                :
VERMONT; KOHL'S DEPARTMENT          :
STORES, INC.; COSTCO                :
WHOLESALE CORPORATION;              :
R. BENOIT,; PATRICK                 :
GREENLET; ADAM O'NEIL;              :
FENG K. AN; MARY AHRENS;            :
BART CHAMBERLAIN; ROBERT            :
SANDERS; JACQUELINE A.              :
BERRIEN; MIRO WEINBERGER;           :
CITY OF BURLINGTON; TRAVIS          :
PLOOF; CHRIS O'CONNORS;             :
BILL SORRELL; CHARLES               :
JORDAN; MIKE HENRY; DOWNS           :
RACHLIN AND MARTIN; DAVID           :
MCLEAN; PETER SHUMLIN;              :
MIKE SUNGUARD; sued in              :
their individual and                :
official capacities,                :
                                    :
        Defendants.                 :

OPINION AND ORDER

Plaintiff Zack McCain, proceeding *pro se* and *in forma pauperis*, brings this civil rights action alleging discrimination on the basis of his race.   Now before the Court is a series of motions, including requests by several Defendants for dismissal and/or summary judgment.   For the reasons set forth below, those latter motions are **granted**, with the exception of Costco

Wholesale Corporation's motion to dismiss, which is **granted in part and denied in part**.

I.    General Factual Background

McCain is African American.  In 1993 or 1994, he pled guilty to federal criminal charges and was sentenced to serve over eight years in prison.  While incarcerated, McCain allegedly learned from a fellow inmate that the federal government is intentionally circulating drugs throughout the African-American community, resulting in mass convictions and incarcerations.  He claims that this nationwide effort, which also involves the for-profit prison industry, was a factor in his own incarceration.  Between 2007 and 2009, McCain pled guilty to two state charges, one of which appears to have been drug-related, and served an additional six months in prison.

In this lawsuit, McCain claims that he has been unable to find or maintain employment because of his criminal record. Specifically, he claims that he has been terminated from or denied employment by a Macy's department store, a Kohl's department store, and Costco.  His legal claims are premised upon the contention that these denials, which were the result of the government conspiracy to incarcerate African Americans, violated his federal statutory and constitutional rights.  In addition to would-be employers, McCain is suing state and federal actors and Corrections Corporation of America ("CCA"), a private prison

2

corporation, for conspiring to enslave African Americans.

Several Defendants now move for dismissal, arguing failure to state a claim and, in the case of the federal defendants, lack of jurisdiction.  Those motions are each addressed below.

II.  Macy's Retail Holdings

On or about February 10, 2010, McCain applied for a position at a Macy's retail store.  At that time, accepting the facts alleged in his Second Amended Complaint as true, he was facing the prospect of homelessness and feared re-imprisonment if he failed to make required child support payments.  Consequently, when the Macy's employment application asked whether he had a criminal record, McCain answered that he did not.

Macy's did not perform a criminal background check on McCain, and hired him to work in their men's wear department. However, a disgruntled co-worker subsequently revealed McCain's criminal history.  On or about June 6, 2010, Macy's security officer Travis Ploof informed McCain that he was suspended for falsifying his employment application.  The Second Amended Complaint alleges that the suspension was discriminatory, as at least two other Macy's employees with criminal records were not disciplined or fired.

Macy's moves to dismiss all claims brought against it pursuant to Federal Rule of Civil Procedure 12(b)(6).  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint

must contain sufficient factual matter, accepted as true, to
'state a claim to relief that is plausible on its face.'"
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." *Id.* This
standard is not "akin to a 'probability requirement,' but it asks
for more than a sheer possibility that a defendant has acted
unlawfully." *Id.* Documents filed by a *pro se* litigant are "to
be liberally construed" and "a *pro se* complaint, however
inartfully pleaded, must be held to less stringent standards than
formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551
U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106
(1976)).

McCain's claims against Macy's are brought under the
Thirteenth Amendment and 42 U.S.C. § 1981. The Court previously
dismissed all claims against Macy's, but allowed McCain leave to
amend his pleadings. In its prior ruling, the Court determined
that McCain had failed to demonstrate the sort of involuntary
servitude required for a claim under the Thirteenth Amendment.
*See McGarry v. Pallito*, 687 F.3d 505, 511 (2d Cir. 2012). The
Court also held that the Thirteenth Amendment does not give rise
to an independent cause of action against private parties. *See*

4

*Del Elmer; Zachay v. Metzger*, 967 F. Supp. 398, 402 (S.D. Cal. 1997) (collecting cases). With regard to McCain's Section 1981 claim, the Court held that he had failed to allege specific facts to support a claim of intentional discrimination. *See Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994) (holding that a plaintiff must specifically allege the "circumstances giving rise to a plausible inference of racially discriminatory intent").

McCain's Second Amended Complaint alleges essentially the same facts as those asserted in his previous pleading, but adds the experiences of two other Macy's employees. First, McCain claims that Marvin Hunt applied to work at Macy's between 2005 and 2007 without disclosing his criminal record. At some point thereafter, Hunt "reoffended" and Macy's became aware of his criminal past. Macy's then allegedly hired him "on the same application." ECF No. 93 at 16. McCain also alleges that Kara Durkin, a white employee, returned to work after an arrest for driving with a suspended license.

McCain presumably includes Hunt and Durkin in his amended pleading in an effort to show that he was treated differently because of his race. As to Hunt, however, McCain clarified in his opposition memorandum that Hunt is African American. Moreover, Macy's knew about Hunt's criminal history when it hired him, while McCain's deception was revealed post-hiring. Meanwhile, Durkin was never prosecuted and thus had no criminal

record to hide.

The Second Circuit has held that to survive a motion to dismiss, a plaintiff claiming race discrimination under Section 1981 "must plausibly allege that (1) the employer took adverse action against him and (2) his race . . . was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015). The Second Circuit has emphasized, however, that "at the initial stage of a litigation, the plaintiff's burden is 'minimal.'" *Id.* (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). Thus, a plaintiff "need only plausibly allege facts that provide at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.* at 86-87 (internal quotation marks omitted).

Here, McCain's claims against Macy's do not meet even this minimal threshold. The Second Amended Complaint alleges that he was terminated when his employer learned that he lied on his employment application. Aside from conclusory allegations of a broad conspiracy to deny the rights of African Americans, the pleadings offer no facts to support a claim of intentional discrimination on the basis of race. The Section 1981 claim against Macy's is therefore **dismissed**.

McCain's opposition memorandum also asserts that Macy's personnel violated his Thirteenth Amendment rights when they

conducted a search of his bag and restricted his freedom of movement. The Thirteenth Amendment prohibits involuntary servitude. *See McGarry v. Pallito*, 687 F.3d 505, 510 (2d Cir. 2012). As there is no allegation here that Macy's forced or coerced McCain to perform work, there is no Thirteenth Amendment claim. Macy's motion to dismiss is therefore **granted**.

## III. Kohl's Department Stores, Inc.

On or about August 5, 2010, McCain applied for work at a Kohl's department store. After he completed his application, Kohl's made him a job offer contingent upon the results of a criminal background check. Kohl's paid a third-party company to conduct the background check, and rescinded the offer of employment after receiving the results.

Nearly three years later, in March 2013, McCain again sought employment at Kohl's. He allegedly spoke with Jason, the Human Resources Manager, who informed him that applicants were denied employment for any criminal conviction aside from driving under the influence. One week later Jason allegedly offered different information, explaining that a conviction for retail theft was the only disqualifier for employment. McCain has since obtained "a report" from the City of Burlington that, though allegedly inaccurate, documents his conviction for retail theft. ECF No. 93 at 35

After consulting with Thomas Perez, a New York-based

investigator (perhaps with the EEOC, although the pleadings do not specify), McCain formally applied for a position at Kohl's. Though not specifically alleged, it appears that he was denied employment. McCain now claims that the EEOC was investigating Kohl's at the time, and that the denial of employment was retaliatory. He also alleges that by singling out retail theft as a ground for denying employment, Kohl's engaged in selective enforcement of its employment policies.

Kohl's has filed two motions for dismissal: a motion to partially dismiss under Federal Rule of Civil Procedure 12, and a motion for summary judgment under Rule 56. The Rule 12 motion addresses McCain's claim under Section 1981 and his retaliation claim. The summary judgment motion addresses McCain's claims under Title VII.

A. Kohl's Partial Motion to Dismiss

McCain's Section 1981 claim alleges that Kohl's subjected him "to different terms and conditions 'to make and enforce contracts' than other white persons similarly situated." *Id.* at 50-51. Section 1981 "protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (quoting 42 U.S.C. § 1981(a)). As discussed previously, a Section 1981 claim requires intentional discrimination on the basis of race. *See Brown v.*

8

*City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 1999) (citing *Milan v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam). This Court previously rejected McCain's Section 1981 claim, finding that the facts did not support a plausible claim that Kohl's or its employees had acted with an intent to discriminate.

McCain's latest pleading is similarly lacking. Accepting the facts alleged as true, a Kohl's employee named Jason offered two different versions of the store's policy with respect to criminal convictions. Whether the store had a blanket policy of denying employment aside from drunk driving convictions, or only denied employment on the basis of retail theft, no facts support a claim that McCain was targeted for discrimination. Indeed, McCain's claims about the timing of Jason's statement, and its possible relationship to a previously-unknown conviction for theft, are highly conjectural. *See Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001) (rejecting racial discrimination claims under 42 U.S.C. § 1981 where plaintiffs did "little more than cite to their mistreatment and ask the court to conclude that it must have been related to their race") (citing *Norton v. Sam's Club*, 145 F.3d 114, 119 (2d Cir. 1998)). McCain's Section 1981 claim against Kohl's is therefore **dismissed**.

As to McCain's retaliation claim, courts evaluate Section 1981 retaliation claims under a burden-shifting analysis. The

plaintiff must first establish a *prima facie* case of retaliation by showing that (1) he engaged in protected activity under § 1981; (2) the defendants were aware of this activity; (3) they took adverse action against him; and (4) a causal connection exists between the protected activity and the adverse action. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010). If that showing is made, the burden shifts to the defendant to offer a legitimate, nondiscriminatory explanation for the adverse action. *Id.* The final burden belongs to the plaintiff, who must produce evidence sufficient to support a reasonable inference that the defendant's explanation is a mere pretext for retaliation. *Id.*

Here, McCain has failed to assert a plausible retaliation claim. Reading his pleadings liberally, he appears to be claiming that Kohl's retaliated against him for contacting the EEOC. However, he does not allege that the people responsible for hiring at Kohl's were aware of that activity, or that there was a causal connection between any protected activity and the alleged adverse employment action.

McCain also claims "retaliatory concealment" to the extent that Kohl's initially argued for dismissal based upon his failure to allege exhaustion of administrative remedies, but then changed course when he produced a right to sue letter from the EEOC. Such litigation conduct does not give rise to any sort of

liability, as merely asserting a legal defense – such as failure
to exhaust administrative remedies – does not constitute unlawful
retaliation.  Furthermore, there was nothing inconsistent about
Kohl's initial assertion about administrative remedies, and
subsequent argument that McCain's claims are untimely.  *Cf.*
*Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d
773, 779 (3d Cir. 2001) ("When properly invoked, judicial
estoppel bars a litigant from asserting a position that is
inconsistent with one he or she previously took before a court or
agency.").  McCain's claim of retaliatory concealment is
therefore **dismissed**.

B.    Kohl's Motion for Summary Judgment

Kohl's has moved for summary judgment on McCain's Title VII
claim, arguing that the claim is untimely.  As discussed
previously, McCain received a conditional offer of employment in
August 2010, but was denied a position after Kohl's received the
results of his criminal background check.  McCain did not file a
Charge of Discrimination with the EEOC at that time.

In November 2012, McCain filed a Charge of Discrimination
against Kohl's with the New York District Office of the EEOC.
The Charge claimed that in March 2012 McCain spoke with someone
at the Kohl's customer service desk in South Burlington, Vermont,
and informed that person of his criminal history.  The person
allegedly told McCain that he could not be hired with a criminal

record.  McCain also allegedly spoke with someone in the toy department, who confirmed what the person at the customer service desk had said.  These conversations reportedly discouraged McCain from applying for a job.

In December 2012, the EEOC sent Kohl's a Notice of Charge of Discrimination regarding McCain's November 2012 filing.  ECF No. 125-3 at 9.  The Notice did not require any further action by Kohl's at that time.  *Id.*  In April 2013, the EEOC issued a dismissal, stating that it was "unable to conclude that the information obtained establishes violations of the statutes." *Id.* at 6.  The EEOC also granted McCain the right to sue, but made clear that "[y]our lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost."  *Id.*  McCain did not file a discrimination charge within 90 days of the right to sue letter.

It is well established that Title VII requires a plaintiff to exhaust administrative remedies before filing suit in federal court.  *See, e.g., Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126 (2d Cir. 2010) (citing 42 U.S.C. § 2000e5(e) and (f)).  Where an administrative claim is filed and a right to sue letter is issued, and as set forth in the notice issued to McCain, suit must be filed within 90 days of the claimant's receipt of the letter.  42 U.S.C. § 2000e-5(f)(1); *see also Cornwell v. Robinson*, 23 F.3d 694, 706 (2d Cir. 1994).  In all

12

other cases, a complaint alleging discrimination under Title VII must be filed with the EEOC "within 180 days of the alleged unlawful employment action or, if the claimant has already filed the charge with a state or local equal employment agency, within 300 days of the alleged discriminatory action." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996); *see also Cooper v. Wyeth Ayerst Lederle*, 106 F. Supp. 2d 479, 500 (S.D.N.Y. 2000) ("The appropriate statute of limitations for a fair representation claim under Title VII is 300 days.").

In analyzing the 180 day and 300 day limitations periods, "the proper focus is on the time of the discriminatory act." *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (citing *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (considering statute of limitations for discrimination claims under Title VII and § 1981)); *accord Morse v. Univ. of Vermont*, 973 F.2d 122, 125 (2d Cir. 1992). In this case, the first alleged discriminatory act occurred in 2010. There is no indication in the record that McCain exhausted his administrative remedies during the 300-day window that followed. Similarly, there is no suggestion of an administrative claim filed within 300 days of the alleged discrimination in 2013. Any claims related to either the 2010 or the 2013 allegations are therefore barred for failure to exhaust administrative remedies.

13

With respect to alleged discrimination in 2012, McCain was permitted to file suit within 90 days of his receipt of the right to sue letter.  That letter was issued in April 2013. Accordingly, the filing of this case in 2014 fell outside the statutory deadline.  Kohl's motion for summary judgment with respect to McCain's Title VII claims is therefore **granted**.

IV.   <u>Costco and Mary Ahrens Vadasz ("Ahrens")</u>

McCain claims that in or about September 2010, he attended a job fair in which a representative from Costco allegedly told attendees that convicted felons may not apply.  Soon thereafter, McCain filed a charge of discrimination against Costco with the EEOC.  After Costco allegedly admitted to having barred convicted felons from employment, the parties entered into a settlement agreement.

McCain subsequently had a disagreement with Mary Ahrens, Costco's attorney, about the terms of the settlement agreement. When McCain discussed the disagreement with the EEOC office in Boston, Defendant Kenneth An of the EEOC allegedly instructed him to disclose his social security number to Ahrens.  Based upon this and other conversations with EEOC, McCain claims that the EEOC acted in a biased manner and violated his rights.

Costco moves to dismiss McCain's constitutional claims for lack of state action.  "Because the United States Constitution

14

regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" *United States v. Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991). Exceptions to this rule may apply. For example, where a private entity is alleged to have violated Fourteenth Amendment rights, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)).

Here, there is no allegation that Costco is a state actor. Nor is there a plausible claim that Costco is so entwined with governmental actors that its own actions may be considered those of the state.[1] McCain's constitutional claims against Costco and Ahrens are therefore **dismissed.**

McCain's statutory claims against Costco and Ahrens are equally meritless. He brings a Section 1981 claim, but again

---

[1] While Thirteenth Amendment claims are an exception to this "state actor" rule, *see Phillips v. Sage Colleges*, 83 F. App'x 340, 341 (2d Cir. 2003), McCain has offered no viable claim of involuntary servitude at the hands of either Costco or Ahrens.

fails to offer facts to support a plausible claim of intentional discrimination.  The Second Amended Complaint alleges that Ahrens acted with "invidious discriminatory racial animus" when she allegedly stated during settlement negotiations, "'why you want to bring race into it?  You don't want to be in no deposition.'" ECF No. 93 at 21.  Accepting as true that Ahrens made such a statement, it appears to have been in response to McCain's own mention of race.  In any event, the mere mention of race in such a conversation does not support a claim under either Title VII or Section 1981.  *See, e.g., De La Pena v. Metro. Life Ins. Co.*, 953 F. Supp. 2d 393, 413 (E.D.N.Y. 2013) (noting that a "stray remark" does not constitute sufficient evidence to state a claim for employment discrimination") (citing *Danzer v. Norden Sys.*, 151 F.3d 50, 56 (2d Cir. 1998)).  McCain further claims that Costco coerced him into signing the settlement agreement, used his social security number to delay the processing of a check, and barred him from ever being able to work for Costco in the future.  None of these alleged acts provides support for a claim of intentional discrimination on the basis of race.  The Section 1981 claims against Costco are therefore **dismissed**.

To the extent that Costco is alleged to have conspired against McCain in violation of Section 1985(2), that claim is again unsupported.  Section 1985(2) makes it unlawful for "two or

16

more persons . . . [to] conspire to deter, by force, intimidation, or threat, any party . . . in any court of the United States from attending such court." 42 U.S.C. § 1985(2). The law also makes it unlawful for "two or more persons [to] conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State . . . with intent to deny to any citizen the equal protection of the laws . . . ." *Id.* The first clause expressly involves conspiracies to obstruct justice in federal courts, while the second clause involves conspiracies to obstruct justice in state courts.

While Section 1985(2) pertains to interference with or retaliation for court proceedings, Costco is not alleged to have knowledge of, or involvement in, any such proceedings. McCain offers no legal support for a contention that administrative proceedings before the EEOC qualify for protection under Section 1985(2), and even assuming such support, his conclusory allegations of wrongful acts are plainly insufficient.

McCain's Section 1985(3) claim fares no better. While Section 1985 prohibits discriminatory conspiracies generally, a Section 1985(3) claim "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb*

*v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (quotation marks omitted).  McCain's allegations of a conspiracy by Costco are highly conclusory, alleging that Costco conspired with both Ahrens and the EEOC to deny him his rights.  The Second Amended Complaint is vague as to the nature of that alleged violation, while McCain's opposition memorandum cites only "the conspiracy . . . to deprive the plaintiff and other African Americans of their fundamental, and Constitutional rights."  ECF No. 115 at 26. Such general claims do not overcome the minimal pleading standards, and the Section 1985(3) claim is therefore **dismissed**.

Lastly, Costco contends that McCain's Title VII claim fails because he never filed an application for employment.  McCain's claim, however, is that he was denied the opportunity to apply because of an unlawful hiring policy.  Assuming that McCain was otherwise eligible to be considered for employment, the alleged denial of an application is sufficient for a Title VII claim. *See, e.g., Houser v. Pritzker*, 28 F. Supp. 3d 222, 238 (S.D.N.Y. 2014).

Costco also suggests that McCain has not been clear about the harm he suffered.  It is plain from his pleadings, however, that the alleged harm consisted of his inability to apply for and secure a job.  Costco's motion to dismiss McCain's Title VII

claim is therefore **denied**.[2]

V.    <u>Benoit, Chamberlain, and the City of Winooski</u>

The Second Amended Complaint alleges that on the morning of March 12, 2013, Officer Benoit, a City of Winooski police officer, stopped McCain while driving and issued him a ticket. The ticket was issued pursuant to 24 V.S.A. § 671(a)(1), which prohibits the operation of a vehicle on a public highway with a suspended or revoked driver's license.  McCain claims that Officer Benoit followed him onto private property, asked him to confirm his name, and asked if he had any drugs.  He accuses Benoit of using 24 V.S.A. § 671(a)(1) as "a proxy on account of race."  ECF No. 93 at 37.

After filing this lawsuit, McCain reportedly contacted the City of Winooski police department and was told that Officer Benoit had a scanning system in his vehicle that could scan license plates.  The scanner would have allegedly alerted Officer Benoit to the fact that McCain was driving with a suspended license.  McCain claims that such a scanner constitutes surveillance without a warrant, thereby violating the Fourth Amendment.

---

[2] While Costco may have a defense to the Title VII claim by virtue of the settlement agreement, the Court previously required that defense to be asserted in a summary judgment motion.  No such motion has been filed.

On March 30, 2013, Vergennes police officer Patrick Greenslet allegedly pulled his vehicle in behind McCain's at a gas station and informed McCain that his license plate tag light was not working.  McCain claims that rather than issuing a ticket, Officer Greenslet coerced him into talking about drug crimes.  A second officer, Adam O'Neil, arrived at the scene and allegedly told McCain that they would not seize his vehicle if he consented to a search of both his person and his car.

The officers discovered various legal documents in McCain's car, including settlement documents from prior litigation with the City of Burlington.  In McCain's pants pocket, the police discovered a substance in a baggie that McCain contends was brownie mix.  They also believed they found heroin residue in the glove compartment.  The officers ultimately agreed to release McCain if he cooperated in making "buys" in Burlington.  McCain agreed to do so, and now claim that those "buys" constituted coerced labor in violation of the Thirteenth Amendment.

A few days later, Williston Police Officer Chamberlain stopped McCain's vehicle after scanning his license plate. Chamberlain allegedly determined that McCain's recent stop in Vergennes had been related to heroin, but did not issue a ticket "because he was under an implicit impression that the plaintiff was under a condition of servitude" as an informant.  ECF No. 93

at 40.  McCain again alleges that the scanner used by the police violated his Fourth Amendment rights.

It its previous ruling, the Court construed McCain's claims as alleging Fourth Amendment violations and a conspiracy to incarcerate African Americans.  As to the conspiracy claim, the Court dismissed the allegations as vague and conclusory.  The Court also dismissed McCain's Fourth Amendment claim against Benoit, finding that a traffic stop due to a suspended license is lawfully justified.  As to Officer Chamberlain, however, McCain did not allege that Chamberlain knew of his suspended license status when he conducted the stop.  The Court therefore denied Chamberlain's motion to dismiss.

In his Second Amended Complaint, McCain now claims that Chamberlain had a scanning device in his vehicle.  While this new claim asserts a Fourth Amendment violation against Chamberlain, it also provides new support for Chamberlain's motion to dismiss.  Specifically, the presence of scanner meant that Chamberlain, like Officer Benoit, was able to identify McCain and obtain information about the status of his license.  For the reasons set forth by the Court in its prior Opinion and Order, that information provided Officer Chamberlain with a lawful basis for the stop.

With respect to the Fourth Amendment claim, it is well

established that a license plate check, by means of a scanner or otherwise, is not a constitutional violation. The Supreme Court has held that "the exterior of a car . . . is thrust into the public eye, and thus to examine it does not constitute a search." *New York v. Class*, 475 U.S. 106, 114 (1986). Courts have applied this same reasoning to a license plate. *See, e.g., United States v. Ellison*, 462 F.3d 557, 563 (6th Cir. 2006) ("[S]o long as the officer had a right to be in a position to observe the defendant's license plate, any such observation and corresponding use of the information on the plate does not violate the Fourth Amendment."); *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 529 (5th Cir. 1999) ("A motorist has no privacy interest in her license plate number."). The Court therefore finds that viewing a license plate with a scanner did not violate McCain's Fourth Amendment rights.

McCain also contends that because he was stopped on private property, and 23 V.S.A. § 674(a)(1) applies only to public roads, the stop by Officer Benoit was improper. While Section 674(a)(1) admittedly applies only to "a public highway," the Second Amended Complaint alleges that Officer Benoit followed McCain from a public highway onto private property. Accordingly, Officer Benoit saw McCain violate Section 674(a)(1), and the subsequent stop on private property was not improper.

22

Finally, McCain's conspiracy claims are no stronger now than in his previous pleading. References to former Vice President Cheney and the CCA claiming to being "tough on crime" do nothing to bolster the allegation of a police conspiracy. The motion to dismiss filed by Officer Benoit, the City of Winooski, and Officer Chamberlain is therefore **granted**.

VI.    Corrections Corporation of America

McCain claims that CCA, a private prison company, is part of a national conspiracy to incarcerate African Americans for profit. McCain does not allege that he has ever been incarcerated in a CCA facility, or otherwise harmed by CCA directly. The Court previously granted CCA's motion to dismiss for failure to state a claim, but as with the other Defendants, granted leave to amend.

The Second Amended Complaint again alleges CCA's role in a conspiracy to incarcerate people for profit. Specifically, McCain alleges that CCA entered into contracts with the State of Vermont to provide inadequate inmate housing, and influenced the Legislature to pass laws that allow traffic stops of non-commercial vehicles. As in his prior pleading, the Second Amended Complaint asserts violations of the Thirteenth Amendment, Title VII, the Tenth Amendment, and Section 1985(3). McCain has also added new claims that CCA violated his right to make and

enforce contracts under Section 1981, and took action with respect to his plea agreement in violation of Section 1985(2).

McCain's Thirteenth Amendment claim fails at the outset, as there is no plausible allegation that CCA has subjected him to any form of involuntary servitude.  The Court previously dismissed McCain's Tenth Amendment claim, and there are no new facts in the Second Amended Complaint to support a different outcome.  Accordingly, the Tenth and Thirteenth Amendment claims are again **dismissed**.

McCain's Section 1981 claim asserts that the "State of Vermont gave CCA contractual rights to **enforce contracts**, although withheld giving the plaintiff the same terms and conditions, to **enforce contracts**, thereby in violation of Section 1981."  ECF No. 93 at 51.  McCain attempts to clarify this allegation in his opposition to the motion to dismiss as follows:

> it[']s plausible that CCA intentionally uses its resources to recruit and hire former Federal Government Officials, so that it may influence the United States Congress, and the State of Vermont Legislature to withhold or enact laws that would create a **demand** for their services, consequently creates a **condition** where the State and Federal Government police powers are being commercialize[d], and eviscerate any responsibility because it [is] being leased out to a Private Corporation who [is] using it to make money, and cause a racial disparity.

ECF No. 119 at 3.  As discussed above, this claim of a conspiracy

24

to violate either constitutional rights or federal statutory rights is highly speculative and conclusory, and does not support a plausible claim. Moreover, the claim does not plausibly allege discriminatory intent as required for a cause of action under Section 1981.

McCain's Section 1985(3) claim was dismissed previously. His amended claim suggests that federal officials, such as former Vice President Cheney, tried to protect CCA's financial standing through drug and other public policy measures, resulting in the disproportionate incarceration of African Americans. These speculative allegations do not enhance the plausibility of McCain's initial Section 1985(3) claim, and that claim is again **dismissed**.

McCain also brings a Section 1985(2) claim, alleging that CCA and other Defendants conspired against him in for appearing in court and signing a plea agreement. However, as McCain does not allege any direct contact with CCA, it is difficult to draw any sort of inference that CCA either interfered with court proceedings or prevented McCain from obtaining justice in the state courts. Furthermore, there is no allegation that CCA was aware of any plea agreement or court proceedings such that it would have involved itself in McCain's legal affairs. This claim is therefore **dismissed**.

With respect to McCain's Title VII claim, the Court previously explained that Title VII pertains to employment, and McCain does not allege any sort of employment-related action by CCA.  CCA's motion to dismiss is therefore **granted**.

VII. <u>The Federal Government</u>

The federal government and the EEOC have moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim.  The Court previously granted a similar motion, dismissing on the bases of sovereign and qualified immunity. Although the Second Amended Complaint includes new allegations, the government again argues for dismissal on those same grounds.

The government first contends that McCain cannot obtain monetary damages on his Thirteenth Amendment claim.  As discussed above, McCain's allegations of a conspiracy involving the government and private actors are highly conclusory and fail to state plausible claim.  Even assuming a plausible claim, however, United States and its agencies may not be sued for damages under the Thirteenth Amendment.  *See, e.g., Cato v. United States*, 70 F.3d 1103, 1110-11 (9th Cir. 1995).  McCain's Fourteenth Amendment claims against the United States and the EEOC are equally barred.  *See San Francisco Arts & Athletics v. U.S.O.C.*, 483 U.S. 522, 542 n.21 (1987) (noting that the Fourteenth Amendment does not apply to the federal government).

McCain's Title VII claim accuses the EEOC of allowing "its procedures to be twisted in a way to create conditions, which perpetuate a[n] adverse impact upon African Americans as the plaintiff, in violation of the 13th Amendment[.]"  ECF No. 93 at 35.  The Court previously dismissed the Title VII claim against the EEOC because the agency is immune from suits regarding its handling of employment discrimination claims.  McCain's amended allegations, focusing upon the allegedly disparate impact of EEOC procedures, offers essentially the same claim on a global, rather than personal, level.  As the Court has already determined, however, McCain's allegations of a conspiracy to incarcerate African Americans – in this case by means of "twisted" EEOC policies – is unsupported by any facts from which this Court could infer a plausible claim.  *Id.*  The Title VII claim against the federal government and the EEOC is therefore **dismissed**.

McCain's various civil rights claims, brought against federal actors in their official capacities, are barred by sovereign immunity as set forth in the Court's prior opinion. *See, e.g., Fed. Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 475 (1994); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994).

McCain also seeks declaratory and injunctive relief against the EEOC pertaining to the issuance of the 2012 Enforcement

Guidance.  Under the Administrative Procedures Act ("APA"), 5 U.S.A. § 702, "[a] person suffering legal wrong because of an agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof."  5 U.S.C. § 702.  Section 702, "waives sovereign immunity in an action seeking equitable relief from wrongful agency action, except were (I) the action also seeks monetary relief; (ii) there is an adequate remedy at law; or (iii) the action is precluded from judicial review by statute or committed by law to agency discretion."  *Polanco v. U.S. Drug Enforcement Admin.*, 158 U.S. 647, 652 (2d Cir. 1998) (citing 5 U.S.C. §§ 701 and 702).

The federal government argues that the APA does not provide the relief McCain seeks because the actions alleged in the Amended Complaint are both discretionary and final.  With respect to finality, judicial review is only available under the APA where an agency action is "made reviewable by statute" or the action is a "final agency action for which there is no other adequate remedy in a court[.]"  5 U.S.C. § 704.

The Supreme Court has established a two-part test for determining whether agency action is final.  *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).  First, "the action must mark the consummation of the agency's decision making process[.]" *Id.* (quotation marks and citation omitted).  Second, "the action must

be one by which rights or obligations have been determined or from which legal consequences will flow[.]" *Id.* at 178 (quotation marks and citation omitted). The agency decision must "inflict an actual, concrete injury" upon the party seeking judicial review. *Williamson Cty. Regional Planning v. Hamilton Bank*, 473 U.S. 172, 193 (1985).

As this Court held in its prior Opinion and Order, nothing in McCain's pleadings indicates an injury as a result of EEOC guidance. Specifically, there is no plausible allegation that the EEOC guidance had any impact upon the decisions or policies used by the private employers to whom McCain applied for work. McCain's APA claims are therefore **dismissed**.

McCain also brings a Privacy Act claim in which he alleges that a federal employee, Defendant Kenneth An, told him to disclose his social security number to Costco for purposes of completing a settlement agreement. The Court previously dismissed the claim, reasoning that An had not improperly retrieved or disclosed McCain's information. Nothing in the Second Amended Complaint compels a different conclusion with respect to either An or the federal government.

Finally, McCain's request for mandatory relief against the federal government is **dismissed**, as the EEOC's enforcement actions were discretionary and thus outside the scope of the

mandamus statute.  *See* 28 U.S.C. § 1361; *Escaler v. United States Citizenship and Immigration Servs.*, 482 F.3d 288, 292 (2d Cir. 2009).  The government's motion to dismiss is therefore **granted**.

VIII. Individual Federal Employees

The last dispositive motion before the Court is that of Defendants Kenneth An, Charles Jordan, Jacqueline Berrien, and Robert Sanders.  The claims against Berrien include violations of McCain's Fifth and Fourteenth Amendment Rights and Section 1985. His claims against An and Sanders include alleged violations of Section 1986 for failure to prevent wrongful civil rights violations.

The Second Amended Complaint claims that Berrien, as EEOC Chair, authorized EEOC guidelines that violated McCain's rights. McCain also alleges that the guidelines failed to provide due process in cases of employment discrimination, and were part of the conspiracy to increase rates of incarceration among African-Americans.  The Court previously dismissed the claims against Berrien for failure to show discriminatory intent.  *See Iqbal*, 556 U.S. at 676 ("[w]here the claim is invidious discrimination in contravention of the First and Fifth Amendments . . . the plaintiff must plead and prove that the defendant acted with discriminatory purpose.").  Nothing in the Second Amended Complaint dictates a different result.

McCain's claims against Berrien under Sections 1985(2) and 1985(3) also fail.  First, the Second Amended Complaint does not allege that Berrien sought to interfere in court proceedings. *See* 42 U.S.C. § 1985(2).  Nor does McCain provide "some factual basis supporting a meeting of the minds" as required for a claim under Section 1985(3).  See *Webb*, 340 F.3d at 110.  All claims against Berrien are therefore **dismissed**.

As noted above, McCain's allegation against Kenneth An does not suggest either the improper retrieval or disclosure of McCain's social security number.  Defendant Sanders, then an EEOC Area Supervisor, is alleged to have told McCain that he knew about the impact of the private prison industry upon minorities. Even assuming such a conversation, McCain does not implicate Sanders in activities that would further such an impact.

The Second Amended Complaint adds as a Defendant EEOC investigator Charles Jordan.  The sole claim against Jordan is that he put a note in McCain's EEOC file, perhaps in retaliation for McCain's inquiries about Hannafords' hiring policies.  This vague allegation, without more, does no suffice to state a plausible claim.  The claims against the individual federal defendants are therefore **dismissed**.

IX.  <u>Remaining Defendants</u>

The Second Amended Complaint names several new Defendants,

31

some of whom have not yet been served.  Because McCain is
proceeding *in forma pauperis*, summonses for those Defendants
shall issue and be served.

X.  Conclusion

    For the reasons set forth above, Macy's motion to dismiss
(ECF No. 97) is **granted**; the motion to dismiss filed by
Defendants Benoit, Chamberlain, and the City of Winooski (ECF No.
98) is **granted**; the motions to dismiss and for summary judgment
filed by Kohl's (ECF Nos. 100, 125) are **granted**; CCA's motion to
dismiss (ECF No. 101) is **granted**; the motion to dismiss filed by
Costco and Ahrens (ECF No. 102) is **granted in part** and **denied**
with respect to McCain's Title VII claim; the federal
government's motion to dismiss (ECF No. 111) is **granted**; and the
individual federal defendants' motion to dismiss (ECF No. 112) is
**granted**.

    McCain's motion for contempt (ECF No. 114) is **denied** as the
Court never limited the scope of filings by either Costco or
Ahrens.  McCain's motion for this Court to find excusable neglect
for any future filing regarding Kohl's motion to dismiss (ECF No.
126) is **denied** as moot.  His motion for extension of time (ECF
No. 116) is **denied**, and his motion for leave to amend (ECF No.
116) is **denied** without prejudice.  McCain's motion for leave to

32

file a surreply (ECF No. 131) is **granted**, and the Court has considered the accompanying declaration.

Summonses shall issue with respect to any and all unserved Defendants.  As all Defendants have not yet been served, McCain's motion to compel discovery (ECF No. 95) is **denied** as premature.

DATED at Burlington, in the District of Vermont, this 29th day of March, 2016.


                              /s/ William K. Sessions III
                              William K. Sessions III
                              District Court Judge